Blasczak *v.* Crown Cork & Seal Company, Inc.
et al., Appellants.

Argued September 19, 1960. Before Rhodes, P. J.,
Wright, Woodside, Ervin, Watkins, and Montgomery,
JJ. (Gunther, J., absent).

*Peter P. Liebert, 3rd,* with him *John J. McDevitt, 3rd,* for appellants.

*Joseph Alessandroni,* for appellee.

OPINION BY WOODSIDE, J., November 16, 1960:

This is a workmen's compensation case. Stanley Blasczak suffered a compensable injury necessitating the amputation of his leg. Four and a half months later, on the day he was to be fitted with an artificial limb, he hanged himself. The insurance carrier paid compensation to the date of his death, but not thereafter. Blasczak's widow then filed this claim. The referee and the board granted compensation, and the court below affirmed the board's decision.

The Pennsylvania Workmen's Compensation Act, as reenacted and amended by the Act of June 21, 1939, P. L. 520, 524, provides in section 301(a), 77 P.S. §431, that "no compensation shall be paid when the injury or death is intentionally self inflicted . . . but the burden of proof of such fact shall be upon the employer."[1]

It has been held that if the deceased "killed himself while possessed by an uncontrollable insane impulse or while in a delirium or frenzy, as a direct result of

---

[1] This section of the workmen's compensation law was not quoted, cited, or ever referred to, in the appellant's brief, in the appellee's brief, in the opinion of the court below, or in the decision of the board.

the accident without rational knowledge of the physical consequences of his act," the death was not *intentionally* self inflicted, and the dependents can recover workmen's compensation. *Widdis v. Collingdale Millwork Co.*, 169 Pa. Superior Ct. 612, 614, 84 A. 2d 259 (1951); *Lupfer v. Baldwin Locomotive Works*, 269 Pa. 275, 112 A. 458 (1921); *Cubit v. Philadelphia*, 138 Pa. Superior Ct. 325, 326, 10 A. 2d 853 (1940).

The burden is upon the employer to establish that the death was a suicide (see statute, supra), but when the suicide is admitted by the claimant, as it was here, the burden is upon the claimant to show that the deceased "killed himself while possessed by an uncontrollable insane impulse or while in a delirium or frenzy, as a direct result of the accident without rational knowledge of the physical consequences of his act". *Kasman v. Hillman C. & C. Co.*, 149 Pa. Superior Ct. 263, 266, 27 A. 2d 762 (1942); *Widdis v. Collingdale Millwork Co.*, supra.

This is a question of fact for the board. We must sustain the board's findings of fact if there is competent evidence to support them. *Koza v. U. S. Steel Corp.*, 190 Pa. Superior Ct. 70, 151 A. 2d 823 (1959); *Chuplis v. Steve Shalamanda Coal Co.*, 192 Pa. Superior Ct. 76, 80, 159 A. 2d 520 (1960).

The appellant contends the evidence does not support the board's finding that the death was not intentionally inflicted.

The evidence establishes that after the loss of his leg, Blasczak was mentally depressed and was being treated by a psychiatrist. There is evidence that immediately after his leg was removed "he was definitely out of his mind." However, after he returned home from the hospital, "he seemed normal". On the day he was to be fitted with an artificial leg, his wife left the house in the morning to go to her employment. When

she returned home in the evening she found him hanging from a rafter in the cellar. He left no notes, gave no indication of depression when his wife left him in the morning, and apparently talked to no person after she left for work, but he had previously expressed concern over whether he could learn to successfully use an artificial limb.

Dr. A. Victor Hansen, a psychiatrist who treated Blasczak for his mental depression, testified for the defendant that in his opinion a person who takes his own life does so with knowledge of what he is doing at the time.

Dr. James J. Ryan, a psychiatrist who never saw the deceased, testified as an expert for the claimant. He said that in his opinion "on the morning the deceased took his life he was out of his mind and not responsible and in a depression," and that the suicide had "a direct relationship with . . . .the loss of his leg."

If the board accepted Dr. Ryan's opinion that the deceased was out of his mind and not responsible for his acts when he committed suicide, it had a legal right to grant compensation on the ground the deceased killed himself while possessed by an uncontrollable insane impulse, and thus not "intentionally."

The appellant argues that Dr. Ryan based his opinion on facts which were not in the record, and therefore the board could not accept his testimony. First, appellant argues that Dr. Ryan said that the day the deceased hanged himself he was a "depressed man", while the only evidence of his health that morning was from his wife, who the appellant contends testified that "he said he felt good." What she said was, "He said he felt good when I left him the notes." We recognize that to conclude that the deceased took his life because he was depressed and that he was depressed because he took his life is arguing in a

circle, but, on the other hand, we can hardly accept the conclusion to which the appellant's reasoning leads us, which is, he felt so good he hanged himself. The evidence shows that the deceased had been seriously depressed over the loss of his leg, and that he expressed concern over his ability to use the artificial limb with which he was to be fitted the day he hanged himself. It can be inferred from the evidence that he was depressed that day.

Secondly, it is argued that Dr. Ryan based his conclusions upon the assumption that deceased had no history of mental disturbance prior to the loss of his leg, when in fact it appears he did have a prior disturbance. This disturbance was called to Dr. Ryan's attention in cross-examination, and he said that the type of disturbance the deceased had suffered did not change his opinion. If this testimony is contradictory, it goes only to the credibility of Dr. Ryan's testimony, which was for the board.

The third assumption of Dr. Ryan which the appellant argues is not supported by the evidence is that the deceased was a Catholic. Dr. Ryan stated that the deceased's Catholic faith was one of the reasons he thought the deceased was not conscious of his act when he hanged himself. Dr. Ryan testified that the deceased was a Roman Catholic without saying how he knew it. The record shows that deceased and his wife were married in a Catholic Church, that their children went to a Catholic school and that he and his wife went to the same church. In reading the record, we could find nothing from which it could be inferred that the deceased was not a Catholic. It seems reasonable to infer from the record that he was. Albeit, this was only one of the reasons for Dr. Ryan's opinion.

Psychiatry is in its infancy and certainly is not an exact science. No person can say with certainty

what caused Blasczak to kill himself, or what went through his mind when he did it, or what realization of his act he had at the time. The law accepts the opinion of a psychiatrist as the "best evidence" of the operation of the mind of man. Here the psychiatrists disagreed as to the deceased's mental state when he committed this unfortunate act. Our opinions of the deceased's mental state at that time is not important. His state of mind is a question of fact for the board to decide. The board must have believed Dr. Ryan, whose opinion was properly before it.

Judgment affirmed.