Workmen's Compensation Appeal Board of The Commonwealth of Pennsylvania and Cleveland Wrecking Company *v.* Jean R. Sullivan, Widow of Lawrence Sullivan, Appellant.

Argued October 10, 1975, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*Arnold Machles,* for appellant.

*John G. Jenemann,* with him *Joseph R. Thompson,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE KRAMER, December 17, 1975:

This is an appeal by Jean R. Sullivan from an order of the Workmen's Compensation Appeal Board, dated October 17, 1974, which affirmed a referee's denial of benefits to Sullivan. The only issue is whether the referee's finding that appellant's husband, Lawrence Sullivan, intentionally killed himself was reached through a capricious disregard of competent evidence. We conclude that it was not and affirm the Board.

Lawrence Sullivan had a history of problem drinking and attendant violence, which resulted in the loss of his job in 1966. After securing a new job with the Cleveland Wrecking Company, Sullivan's problems continued and culminated in an altercation with fellow employes on November 12, 1966, at one of Cleveland's job sites. As a result of this altercation, which involved Sullivan's chasing one of his fellow employes with heavy machinery in an attempt to run him over, Sullivan was discharged by Cleveland.

At the same time Sullivan was having these employment problems at Cleveland, the appellant, along with Sullivan's three daughters, left the Sullivan home be-

cause of his excessive drinking and violent tendencies. Despite Sullivan's entreaties, his family never returned.

On December 14, 1966, Sullivan, apparently in a depressed mental state, hanged himself. The manner of death leaves no doubt that Sullivan's death was a suicide, and appellant does not contest this fact.

Section 301 (a) of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §431, provides that "no compensation shall be paid when the injury or death is intentionally self-inflicted, or is caused by the employe's violation of law, but the burden of proof of such fact shall be upon the employer." It has been held that if an employe kills himself "while possessed by an uncontrollable insane impulse or while in a delirium or frenzy, as a direct result of the accident without rational knowledge of the physical consequences of his act," the death is not intentionally self-inflicted within the meaning of the Act and benefits may be awarded if the other statutory requirements are satisfied. *Blasczak v. Crown Cork & Seal Company, Inc.,* 193 Pa. Superior Ct. 422, 423-24, 165 A.2d 128, 129 (1960); *Widdis v. Collingdale Millwork Company,* 169 Pa. Superior Ct. 612, 84 A.2d 259 (1951).

In cases where suicide is admitted, as in the instant case, the burden of proof shifts to the claimant to show that the decedent's life was taken during an episode for which the decedent was not legally responsible. *Blasczak, supra.* The mental state of the decedent is a question of fact for the referee to decide, and when the party with the burden of proof has failed our scope of review is limited to determining whether the findings of fact are consistent with each other and with the conclusions of law, and whether there has been a capricious disregard of competent evidence. *Rice v. A. Steiert & Sons, Inc.,* 8 Pa. Commonwealth Ct. 264, 301 A.2d 919 (1973). The party prevailing below receives the benefit of any inferences reasonably deducible from the evidence. *Draco Development Corp. v. Workmen's Compensation Appeal*

*Board,* 11 Pa. Commonwealth Ct. 41, 312 A.2d 463 (1973).

An examination of the referee's adjudication indicates that the findings are unquestionably consistent with each other and with the conclusions of law, and we are thus left with the question of whether the referee capriciously disregarded competent evidence. We defined capricious disregard in *Bullock v. Building Maintenance, Inc.,* 6 Pa. Commonwealth Ct. 539, 540-41, 297 A.2d 520, 522 (1972):

> "[Capricious disregard] is not merely disbelieving a witness. To constitute capricious disbelief there must be a willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubts as to its truth. To charge . . . capricious disbelief, the adjudication must be so flagrant as to be repugnant to a man of reasonable intelligence."

The proof regarding Sullivan's possible mental state at the time he took his life consisted largely of psychiatric speculation based upon the types of personality disorders which could reasonably result from the unfortunate condition and occurrences which tormented Sullivan. The appellant attempted to prove that Sullivan was deeply embarrassed by the physical beating he sustained while at work (the alleged accident), and that even one month later he was uncontrollably driven by this event to take his life.

Cleveland pointed to the autopsy's showing of a high alcohol content in Sullivan's blood to support its contention that Sullivan had decided to kill himself and drank "until he had the nerve to do it." This position is supported by medical testimony on the depressant effect of alcohol on the personality in general and on the instinct for self-preservation in particular. Thus, Cleveland finds an intentional, rational element in Sullivan's conduct immediately prior to death.

Cleveland further points to medical evidence indicating that Sullivan's loss of his job and family were more likely to have driven him to suicide than the altercation which preceeded his dismissal. This alternative explanation, which runs counter to a conclusion that the impulse, delirium or frenzy required by *Blasczak, supra,* was "a direct result of the accident" was apparently accepted by the referee, in light of all of the evidence which indicated that the loss of job and family had affected Sullivan.

Cleveland's theory of the circumstances and causes of Sullivan's suicide is plausible and, to the extent possible on such a difficult factual question, supported by competent evidence. We see no basis for concluding that in accepting Cleveland's position the referee capriciously disregarded competent evidence. Accordingly, we

ORDER

AND NOW, this 17th day of December, 1975, the order of the Workmen's Compensation Appeal Board, dated October 17, 1974, denying benefits to Jean R. Sullivan, is affirmed.