518 A.2d 883

Diane McCoy, w/o Lawrence McCoy, III, Deceased, Petitioner *v.* Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.), Respondents.

Argued December 11, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*John P. Koopman,* with him, *S. Richard Klinges, III, Begley, Carlin & Mandio,* for petitioner.

*Susan McLaughlin,* with her, *David L. Pennington, Harvey, Pennington, Herting & Renneisen, Ltd.,* for respondents, McCoy Catering Services, Inc.

OPINION BY JUDGE PALLADINO, December 11, 1986:

Diane McCoy appeals from an order of the Workmen's Compensation Appeal Board which upheld a referee's decision denying Petitioner's fatal claim petition for her husband's suicide under Section 301(a) of The Pennsylvania Workmen's Compensation Act.[1] We affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §431. This Section provides in part:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven of this article: Provided, that no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employe's violation of law, but the burden of proof of such fact shall be upon the employer. . . .

*Id.*

McCoy's husband died of a self-inflicted gunshot wound on December 9, 1979. He left a note telling his wife not to go into the garage but to call the police from her mother's home. Prior to his suicide, the husband saw a Board-certified psychotherapist, who later testified that stress from the severe financial difficulties of the family catering and food service business caused him to commit suicide. A Board-certified psychiatrist testified that, in his opinion, the husband did not commit suicide while he was psychotic or in a frenzy but instead elected, planned and executed it in such a way that he was fully aware of the consequences of his actions.

McCoy contends that the Board erred as a matter of law in concluding that McCoy's suicide was intentional. She urges that the referee, and the Board, should have applied the "chain-of-causation" test, as adopted by the majority of jurisdictions, rather than the "Sponatski rule" which, she asserts, would lead to finding that her husband's suicide is compensable. We agree that the "chain-of-causation" test should be adopted to determine if a suicide is compensable under Section 301(a) of the Act. However, when that test is applied to the facts of this case, benefits must be denied.

The referee found that McCoy's husband was aware of the consequences of his actions and concluded that McCoy failed to meet her burden of proving that her husband killed himself while "possessed of an uncontrollable, insane impulse or while in a delirium or frenzy." The test articulated by the referee was the "Sponatski rule," which was adopted by the Superior Court in *Blasczak v. Crown Cork & Seal Co.,* 193 Pa. Superior Ct. 422, 165 A.2d 128 (1960). However, this Court has held that the rule should not be read too literally. *Commonwealth v. Makar,* 53 Pa. Commonwealth Ct. 83, 416 A.2d 1155 (1980). Rather than requiring

proof that a decedent was raving or raging against someone or something before he committed suicide, the rule has been interpreted by this Court as providing that where a suicide is admitted, a claimant must show that the decedent took his life during an *episode* for which the decedent was *not legally responsible. Id.* We consider the *Makar* interpretation to have been a substantial step forward embracing the so-called chain-of-causation test.

The chain of causation test is set forth in *Kahle v. Plochman, Inc.,* 85 N.J. 539, 428 A.2d 913 (1981) and requires that:

> [A]n employee's death by suicide is compensable where the original work-connected injuries result in the employee's becoming dominated by a disturbance of mind directly caused by his or her injury and its consequences, such as extreme pain and despair, of such severity as to override [sic] normal rational judgment.

*Id.* at 547, 428 A.2d at 917. The test allows compensation if a suicide is caused by pain, depression or despair, resulting from a work-connected injury, so severe as to override rational judgment.

The Sponatski rule requires that a decedent act without conscious volition to produce his death and without knowledge of the physical consequences of his act. However, the Supreme Court of New Jersey, in its comprehensive *Kahle* decision, rejected these requirements as unrealistically allowing compensation in cases marked by violent or eccentric methods of self-destruction, while denying it in cases presenting "a story of quiet but ultimately unbearable agony leading to a solitary and undramatic suicide." *Id.* at 543, 428 A.2d at 915. The *Kahle* court accepted the chain of causation test as the more realistic and reasonable test. Under that test, even though a suicide was volitional or

committed with knowledge of its consequences, a decedent cannot be said to have acted intentionally if his rational thought processes gave way to mere spontaneous response. We now specifically adopt the "chain of causation" test.

The elements which a claimant must prove in order to receive compensation under this test are: (1) that there was initially a work-related injury as defined by Section 301 of the Act;[2] (2) which injury directly caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and (3) which disturbance resulted in the employee's suicide. After examining the facts of this case, we find that McCoy has failed to prove that the injury which caused the disturbance that resulted in McCoy's husband's suicide was work-related.

This element is crucial to allowing recovery under the Act for two reasons. First and foremost, is the statutory language defining "injury" which includes the following: "whenever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from [an injury arising in the course of employment and related thereto] and its resultant effects, and occurring within three hundred weeks after the injury." Section 301 of the Act, 77 P.S. §411. The legislative intent as expressed by this language is clear: if the employee's death, whether it be by suicide or other causes, is not the result of a work-related injury, it is not compensable.

Second, under both the former Sponatski rule as adopted and applied by the Court of this Commonwealth,[3] and under the chain-of-causation test as adopt-

[2] 77 P.S. §411.

[3] *See e.g., Allegheny Ludlum Steel Corp. v. Workmen's Compensation Appeal Board (Fisher)*, 91 Pa. Commonwealth Ct. 480, 498 A.2d 3 (1985); *University of Pittsburgh v. Perlman*, 49 Pa. Com-

ed by the majority of jurisdictions,[4] the claimant must prove that the suicide is the result of a work-related injury. This requirement is necessary both to establish the employer's liability under the Act, and to eliminate workmen's compensation claims arising from suicides which are not job-related.

This Court has previously held that suicide may be compensable under the Act provided that the suicide is a direct result of a work-related mental illness. *Allegheny Ludlum Steel Corp. v. Workmen's Compensation Appeal Board,* 91 Pa. Commonwealth Ct. 480, 498 A.2d 3 (1985); *University of Pittsburgh v. Perlman,* 49 Pa. Commonwealth Ct. 347, 405 A.2d 1048 (1979). In order to be work-related, the mental injury must stem from the decedent's functioning as an employee, not from circumstances which he or she encounters in another capacity. *Klein v. Workmen's Compensation Appeal Board (Plaza Home Center, Inc.),* 91 Pa. Commonwealth Ct. 247, 496 A.2d 1346 (1985). Thus, in *Klein* we held that mental illness is not compensable when the claimant did not establish that the illness resulted from the employment relationship, but rather from the claimant's ownership interest in the business and his loss of his investment, time and personal esteem. *Id.* at 249-50, 496 A.2d at 1347.

In the case at bar McCoy's fatal claim petition alleges that "the nature and cause of the accident were work-related mental stress." In support of her allegation, McCoy presented the testimony of Dr. Joseph A. Hempsey, a board certified psychotherapist, who testi-

---

monwealth Ct. 347, 405 A.2d 1048 (1979); *Workmen's Compensation Appeal Board v. Sullivan,* 22 Pa. Commonwealth Ct. 386, 348 A.2d 925 (1975); *Blasczak v. Crown Cork & Seal Co.,* 193 Pa. Superior Ct. 422, 165 A.2d 128 (1960).

[4] *See e.g., Kahle v. Plochman, Inc.,* 85 N.J. 539, 428 A.2d 913 (1981) and cases cited therein.

fied that the decedent was in a hopeless or despair type of situation and was therefore suffering a stress reaction because "he was not successful in acquiring money from work . . . and he wasn't able to acquire money to support his family." Dr. Hempsey further testified as follows:

Q. Doctor, do you have an opinion based on reasonable medical certainty as to what caused the decedent to commit suicide?

A. The stress factor on his life.

Q. And what caused the stress factor? Where did it originate from in your opinion?

A. The inability to provide sufficient funds, the failure of his work.

Q. The failure of the catering business?

A. Yes, indeed.

The referee accepted Dr. Hempsey's testimony as credible and found that decedent's "stress factor was a direct result of the financial problems of the business and resulted from the business going down hill." This finding is supported by substantial evidence and is in accordance with the law. It does not, however, establish that decedent's stress was a result of his functioning as an *employee*. Rather, it indicates that the stress was derived from his inability to support his family because the family business was failing. Therefore, this finding supports our conclusion that decedent's suicide was not the result of a work-related injury and is not compensable under the Act.

Accordingly, we affirm the order of the Workmen's Compensation Appeal Board.

### ORDER

AND NOW, December 11, 1986, the order of the Workmen's Compensation Appeal Board, No. A-84813 dated September 27, 1984 is affirmed.

Judge ROGERS dissents.

CONCURRING AND DISSENTING OPINION BY PRESIDENT
JUDGE CRUMLISH, JR.:

I concur in that part of the majority's opinion which
adopts the chain-of-causation test to determine if a sui-
cide is compensable under Section 301(a) of the Work-
men's Compensation Act.

However, I disagree with the majority's application
of the chain-of-causation test to McCoy's fatal claim peti-
tion.

Under *Klein,* McCoy is entitled to benefits if his sui-
cide is the result of a work-related injury arising from
his employment duties, as distinguished from an injury
occurring from the loss of an ownership interest. The
chain-of-causation test provides compensation to a
decedent's claimant if the death was caused by despair
which developed from employment functions. *Kahle.*

The record discloses that McCoy first worked for his
father's catering business for five years after he was mar-
ried. McCoy then pursued an auto-racing career, how-
ever, he returned to the business when his father be-
came ill. After his father's death, McCoy and a family
friend shared the responsibility of operating the busi-
ness, while McCoy's mother also remained active.[1]
McCoy handled the sales and management aspects,
while his friend purchased and prepared the foods.

The referee, although denying benefits under the
*Sponatski* test, found that McCoy was frequently agitat-
ed and upset by small business problems which other-
wise would have been easily solved. (Finding of Fact
No. 15.) McCoy was concerned about the business
problems as they related to not only his wife and his
children but also his mother for whom the business was

---

[1] When asked on cross-examination, who was the owner of
McCoy Catering, Ritchie Webb, McCoy's friend, testified that the
senior Mrs. McCoy was the owner. N.T., 3/25/80, p. 51.

the sole source of income. (No. 16.) A few days prior to McCoy's death, the business developed problems with one of the company's largest customers, causing him to become very upset. (No. 17.) Moreover, the threat of a key employee to quit, unless given ownership rights, and threats by suppliers to stop shipments also upset McCoy. (Nos. 18, 19.) Finally, the referee found, "Dr. Hempsey further concluded, and the Referee believes that the stress factor was a direct result of the financial problems of the business and resulted from the business going downhill." (No. 33.)

These findings indicate that McCoy suffered from stress arising from his employment duties. His perceived and, in fact, actual failure to manage the business properly *resulted* in financial difficulty for his family. The majority, I believe, wrongly focuses on this result rather than the cause of the stress.

The distinction between stress occurring from employment duties and from ownership interest in the small family-operated business area is difficult to delineate. It is certainly arguable that the referee's findings indicate that McCoy's mental stress stemmed from these two factors. However, I believe that the findings and record support the conclusion that McCoy's stress arose from his failure as a manager, which naturally affected his ability to support his family.

I would reverse the Board decision and remand for computation of benefits.