632 A.2d 973

**Deborah HALVORSEN, Widow of Gerard T. Halvorsen, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Congoleum Corporation), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1993.

Decided Oct. 12, 1993.

Robert M. Fellheimer, for petitioner.

Patricia A. Mattern, for respondent.

Before COLINS and McGINLEY, JJ., and SILVESTRI, Senior Judge.

COLINS, Judge.

Deborah Halvorsen (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision denying her fatal claim petition and denying her claim petition for medical expenses.

Gerard T. Halvorsen (Decedent) was employed by Congoleum Corporation (Employer) as a machine operator. On September 23, 1986, Decedent's hand was injured in the course of his employment, and he began receiving workmen's compensation benefits. On July 18, 1988, Decedent was discovered dead. Thereafter, Claimant filed a fatal claim petition and a claim petition for medical expenses against Employer. Hearings were held before the referee, who made the following relevant findings of fact and conclusions of law:

## FINDINGS OF FACT

2. Decedent had a history of substance abuse and psychiatric disorders which preceded his September 23, 1986 hand injury.

3. Because of complaints of pain, decedent underwent hand surgery on or about November 3, 1986.

4. Claimant's decedent was re-admitted to Crozer–Chester Medical Center for kidney stone pain March 8 through March 12, 1987. Despite his history of addiction, decedent was administered Demerol for kidney stone pain....

5. Three months after being administered Demerol for kidney stone pain, the decedent was again admitted to Crozer–Chester Medical Center on June 25, 1987. Entries in the June 1987 Crozer–Chester Medical Center [records] reflect that decedent's substance abuse and psychiatric disorders recurred three months after being administered Demerol.... [T]he decedent was transferred to the Horsham Clinic for continuing in patient treatment with Dr. Braid and that June 1987 was the first time since 1983 that Dr. Braid treated decedent for substance abuse and psychiatric disorders.

6. Dr. Braid's testimony, as corroborated by his office records, that adjustments were made to decedent's prescription regime during the course of his treatment as some medications were more effective than others and at different dosages is credible and persuasive. [T]he evidence that decedent's abuse of medications interfered with Dr. Braid's ability to treat the decedent is also compelling as the record ... reflects ample evidence of decedent's abuse of medication. Dr. Ayd's testimony that Dr. Braid never adjusted decedent's medication is rejected.

7. Decedent had a prior history of and, at least as of the summer of 1987, an ongoing problem with abuse of drugs in that decedent, against the medical advice from Dr. Braid, took more medication than prescribed and mixed medications prescribed by Dr. Braid with other medications

which also had sedating qualities, against the advice of Dr. Braid.

8.  Decedent underwent hand surgery in May 1988 which greatly reduced, if not totally resolved, the hand pain decedent had previously experienced.... Claimant filed a Section 302 Protection from Abuse Petition during this time and decedent, thereafter, was admitted to Crozer–Chester Medical Center ... for substance abuse and psychiatric disorders. The hospital chart reflects that decedent had no wish to live at that point, six weeks before he died.

. . . .

11.  Both claimant and defendant conclude, pursuant to the toxicology portion of the autopsy report, that decedent died of Amitriptyline poisoning....

. . . .

13.  The opinion testimony of Dr. Ayd is rejected as unpersuasive.

14.  [D]ecedent's excessive ingestion of Amitriptyline resulted from an intentional refusal to follow reasonable medical treatment, services and medicines.

. . . .

16.  The records submitted into evidence established that decedent had a longstanding history of suicidal ideation and that, despite the resolution of his hand pain, decedent continued to exhibit signs of suicidal potential through the summer of 1988. In this regard, the evidence including the May 1988 Crozer–Chester Medical Center entries regarding decedent's wish not to live, the breakup of decedent's marriage, family discord, and later, decedent's moving into a room by himself in the last two weeks before he died, is compelling and credible.

17.  The testimony of Dr. Cohn, Dr. Michals and medical examiner, Mr. Purnell, that the amount of Amitriptyline found in the body of decedent was so high that the ingested

overdose could not have been inadvertent, only intentional, is accepted as credible and persuasive.

18. The evidence submitted by Dr. Braid, by way of testimony and office records, the May 1988 Crozer–Chester Medical Center hospital records and the testimony of Dr. Michals that decedent experienced marital discord, particularly in the last weeks of decedent's life, such that discord was a significant factor contributing to decedent's depression is accepted as persuasive, credible and compelling.

19. The testimony of Dr. Braid that had decedent followed medical advice and taken medications as prescribed, the decedent would not have died, is accepted as highly persuasive, credible, and accordingly, such testimony is accepted.

20. The opinion of Dr. Michals that decedent committed suicide is accepted as credible and persuasive.

21. Because claimant refused to execute an authorization for the release of welfare benefits, her testimony of dependence is rejected particularly since she was employed on a part-time basis and living apart from her husband at the time he died. Further the amount which decedent was contributing could not have been a substantial portion of claimant's support.

## CONCLUSIONS OF LAW

2. Claimant has failed to satisfy her burden of proving by competent, persuasive evidence that decedent's overdose and death on July 18, 1988 was causally related to his work-related accident of September 23, 1986 and thus benefits must be denied.

3. Because death followed from failure to accept and follow reasonable medical treatment and services, this claim is not compensable pursuant to Section 306(f)(4).

4. Claimant has failed to establish by competent and unequivocal medical testimony that decedent took his life in an irrational frenzy as a direct result of the injury.

5. No compensation shall be paid to a claimant when the injury is self-inflicted, or when death is a suicide.

6. The employer in the instant suit, met its burden of proving by a preponderance of the evidence, that decedent's death was intentionally self-inflicted; therefore, benefits are not payable.

7. Claimant was separated from decedent at the time of his death and even though she received some funds from decedent prior to his death, she has not established that decedent provided a substantial portion of her support and therefore, dependency has not been established.

In light of the above, the referee denied Claimant's fatal claim petition and, further, denied her claim petition for medical benefits. Claimant appealed to the Board, which affirmed the referee. This appeal followed.

Claimant contends that (1) the referee engaged in capricious and improper conduct by deciding this case in less than four days, (2) the referee's finding that Decedent committed suicide is not supported by sufficient competent evidence, (3) the referee erred in concluding that Decedent's death was not causally related to his work-related injury, (4) the referee erred in relying on an overruled case in determining that, in the event Decedent committed suicide, his suicide was not compensable, (5) the referee's finding that Decedent failed to accept and follow reasonable medical treatment is not supported by substantial evidence, (6) the referee erred in concluding that she was not dependent on Decedent, and (7) the referee erred in denying her compensation for Decedent's medical bills.

■ First, Claimant contends that the referee acted capriciously by deciding this case in four days. Claimant argues that the record in this case is extremely complex, including over 1000 pages of testimony, and, for that reason, it was impossible for the referee to properly examine and evaluate the record in four days. We disagree. In *Reinstadtler v. Workmen's Compensation Appeal Board (Egler, Anstandig, Garrett & Riley)*, 143 Pa.Commonwealth Ct. 429, 599 A.2d 266 (1991), *petition for allowance of appeal denied*, 530 Pa. 649, 607 A.2d 258 (1992), we held that a referee did not err when

the referee rendered a decision and adopted employer's proposed findings of fact *one day* after employer submitted the proposed findings of fact. Moreover, regardless of the complexity of this case, we believe that four days was an adequate amount of time for the referee to review the record and make an informed decision.[1]

Claimant contends that the referee's finding that Decedent committed suicide is not supported by sufficient competent evidence. Because there is a legal presumption against suicide, the employer has the burden of proving that an employee took his or her own life. *Garcia v. Workmen's Compensation Appeal Board (Bethlehem Steel Corporation)*, 503 Pa. 342, 469 A.2d 585 (1983). In the instant case, the record shows that Decedent had a long history of psychiatric problems (bipolar disorder, depression, drug and alcohol dependence), as well as a history of suicidal ideation. The referee accepted the testimony of Employer's experts, Dr. Cohn, Dr. Michals, and Mr. Purnell, a medical examiner, each of whom opined that Decedent intentionally ingested an overdose of amitriptyline. Further, the referee accepted Dr. Michals' opinion that Decedent committed suicide. Dr. Michals testified as follows:

> [B]ased on the [Decedent's] past history of the suicidal intent and actions which required hospitalizations, based on his getting the excess medication as shown in the medical record, based on the fact—which I think is very important— of the sense of loss he experienced with his family, living by himself, these types of events are very significant for a person who is very depressed and based on the fact that he didn't tell anyone that he was going to take his life, it is my

---

1. Claimant also argued that the referee acted capriciously by adopting verbatim the Employer's proposed findings of fact and conclusions of law. As long as the referee's decision is supported by substantial evidence and the referee did not err as a matter of law, a referee is not precluded from adopting a party's proposed findings of fact and conclusions of law. *Sullivan v. Workmen's Compensation Appeal Board (Philadelphia Electric Company)*, 120 Pa.Commonwealth Ct. 364, 548 A.2d 404 (1988).

opinion that his intent was to take his life and his death was a suicide.

Deposition of Dr. Michals at 35–36. In view of the above, we conclude that there is substantial evidence in the record supporting the referee's finding that Decedent committed suicide, and we conclude that Employer satisfied its burden of proving that Decedent's death was a suicide.

■■■ Claimant argues that even if Decedent committed suicide, his death is compensable, because Decedent's suicide was caused by the pain and depression he experienced as a result of his work-related injury. When a claimant alleges that an employee committed suicide because of pain, depression, or despair caused by a work-related injury, the suicide is compensable if the claimant proves, utilizing the "chain of causation" test, the connection between the work injury and the employee's suicide. *SCM Corporation v. Workmen's Compensation Appeal Board (Shullman)*, 102 Pa.Commonwealth Ct. 536, 518 A.2d 887 (1986). The chain of causation test has three elements: (1) The decedent suffered a work-related injury as defined by Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act);[2] (2) the decedent's injury caused the decedent to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and (3) the disturbance resulted in the decedent's suicide. *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.)*, 102 Pa.Commonwealth Ct. 436, 518 A.2d 883 (1986), *petition for allowance of appeal denied*, 517 Pa. 595, 535 A.2d 84 (1987).

■■■ As a preliminary matter, we note that the burden of proof for psychiatric injuries articulated in *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990), is inapplicable to this case. *Martin* held that a claimant seeking to show that he or she sustained a psychic injury has the burden of proving by objective evidence that the mental injury was caused by abnormal working conditions, rather than the claimant's subjective reaction to normal working conditions. Thus, when a

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411.

claimant asserts that a decedent sustained a work-related *psychiatric* injury which caused the decedent to commit suicide, the claimant must demonstrate, in accordance with *Martin*, that the decedent's alleged psychiatric injury was caused by abnormal working conditions. *City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Commonwealth Ct. 483, 583 A.2d 852 (1990), *petition for allowance of appeal denied*, 528 Pa. 625, 597 A.2d 1154 (1991). In the present case, however, Claimant alleges that a work-related *physical* injury, for which Decedent was receiving workmen's compensation benefits, caused Decedent to develop a mental illness that, in turn, caused him to commit suicide. The heightened burden of proof for psychiatric injuries does not apply when a mental disability is alleged to have been caused by work-related physical injury. *Bell v. Workmen's Compensation Appeal Board (Allegheny County Housing Authority)*, 152 Pa.Commonwealth Ct. 636, 620 A.2d 589 (1993). Therefore, Claimant was not required to prove that Decedent suffered a psychiatric injury caused by abnormal working conditions.

It is undisputed that Decedent sustained a physical injury compensable under Section 301(c) of the Act, 77 P.S. § 411; hence, Claimant satisfied the first element of the chain of causation test. However, our review of the record demonstrates that Claimant did not present any evidence to the referee indicating that Decedent's work injury caused a disturbance of his mind that overrode his normal rational judgment and resulted in his suicide, as required by the second and third elements of the chain of causation test. Claimant argued, at the hearings before the referee, that Decedent accidentally died of an overdose of amitriptyline; Claimant never argued that Decedent's death was a suicide. Claimant introduced into evidence the testimony of Decedent's treating physician, Dr. Braid.[3] Dr. Braid testified that he did not know whether Decedent committed suicide. Moreover, Dr. Braid opined that Decedent's mental state improved in June

3. Claimant also introduced the medical testimony of Dr. Frank J. Ayd, Jr., whose testimony was rejected by the referee.

and July of 1988, the period immediately before his death, because the pain caused by Decedent's work-related injury was eliminated by a surgical procedure performed in May of 1988. Hence, we hold that Claimant did not meet her burden of proving that Decedent committed suicide as a result of a deranged mental condition caused by his work-related injury.[4]

Therefore, we hold that the referee properly dismissed Claimant's fatal claim petition. *McCoy*. Moreover, since the referee properly dismissed the fatal claim petition, we need not decide Claimant's contention that the referee erred in concluding that she was not dependent on Decedent for her support. Also, we need not address the contention that the referee erred in concluding that Decedent's death was not compensable, because Decedent did not follow the reasonable medical treatment prescribed by his physician.

▪▪▪ Last, Claimant contends that the referee erred in denying her claim petition for medical benefits. In a workmen's compensation case, an employer is required to pay for reasonable medical and surgical services that are needed by an injured employee. Section 306(f) of the Act, 77 P.S. § 531. However, an employer is responsible for paying only those medical expenses that are connected to the employee's work-related injury. *King v. Workmen's Compensation Appeal*

4.  Claimant contends that the referee erred as a matter of law by relying on overruled case law when he determined that, if Decedent committed suicide, the suicide was not compensable. Specifically, Claimant argues that the referee applied the "Sponatski rule," which was adopted by the Superior Court in *Blasczak v. Crown Cork & Seal Company, Inc.*, 193 Pa.Superior Ct. 422, 165 A.2d 128 (1960) and was subsequently overruled by this Court in *McCoy*. The "Sponatski rule" required a claimant to prove that a decedent committed suicide while possessed by an uncontrollable, insane impulse or while in a delirium or frenzy. Our review of the referee's conclusions of law suggests that the referee applied the "Sponatski rule" to this case. However, because the Claimant did not present any evidence to satisfy her burden of proving that Decedent's suicide was compensable under the chain of causation test, the referee's application of the "Sponatski rule" was harmless error, and we need not remand to the referee to allow application of the proper test. *Berry v. Workmen's Compensation Appeal Board (United Minerals & Grain Corporation)*, 144 Pa.Commonwealth Ct. 684, 602 A.2d 415 (1992).

*Board (Wendell H. Stone Co.)*, 132 Pa.Commonwealth Ct. 292, 572 A.2d 845 (1990).

The medical expenses in question were incurred by Decedent when he was hospitalized at the Crozer–Chester Medical Center and the Horsham Clinic from June 30, 1987 through October 5, 1987. Decedent was hospitalized at that time for the treatment of psychiatric disorders and substance abuse problems. The referee, in Findings of Fact Nos. 4 and 5, found that Decedent, prior to his 1986 work injury, had a history of psychiatric illness and drug addiction and that those disorders recurred in June of 1987 after he was administered demerol in March of 1987 for a kidney disease unrelated to his employment. The aforementioned findings are supported by substantial evidence.

The party that prevailed before the referee, in this case Employer, is entitled to the benefit of the most favorable inferences to be drawn from the evidence. *Old Republic Companies v. Workmen's Compensation Appeal Board (Eckenrode)*, 103 Pa.Commonwealth Ct. 159, 520 A.2d 77 (1987). The referee did not explicitly state in his decision that he denied the claim for medical expenses on the ground that the expenses were unrelated to Decedent's work injury. However, it can reasonably be inferred from the referee's decision that the referee concluded that Decedent was hospitalized in 1987 for psychiatric and drug problems unrelated to his work injury. *Id.* Therefore, we hold that the referee did not err in denying Claimant's petition for medical expenses. *King.*

Accordingly, the Board's order is affirmed.

## ORDER

AND NOW, this 12th day of October, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.