Keith CURTIS, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (BERLEY ELECTRIC COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 24, 1997.

Decided April 7, 1999.

---

George D. Walker, Jr., Philadelphia, for petitioner.

Martin J. Fallon, Jr., Philadelphia, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

Keith Curtis (Claimant) appeals from the order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ) granting of Berley Electric Company's (Employer) Petition for Suspension which raises for the first time the issue of whether a claimant's total disability benefits may be suspended under the Pennsylvania Workers' Compensation Act (Act) when he voluntarily inflicts an incapacitating injury to himself which prevents the possibility of

his returning to the work force.[1] We affirm.

On September 27, 1988, while employed as an electrician by Employer, Claimant sustained a work-related injury to his low back during the course and scope of his employment and began receiving total workers' compensation benefits. Claimant developed right leg pain. An MRI scan and myelogram demonstrated the presence of an L5/Sl disc herination on the right side, which was excised on December 1, 1988, by Claimant's treating physician, Dr. Richard G. Traiman.

On or about April 7, 1989, Claimant experienced a significant increase in his back and leg pain. His treating physician obtained a new MRI scan of his lumbar spine which demonstrated the presence of a recurrent disc herniation of the L5/S1 level. Claimant was last seen by Dr. Traiman on October 12, 1989 at which time Claimant was given the results of the new MRI scan and told by his treating surgeon that the disc should be excised and, since his disc herniation(s) are recurring, that a fusion may be required.

During this time, Claimant was also being treated for physical and psychological conditions associated with the disease of alcoholism, including drug use, alcohol withdrawal syndrome, emotional disturbances from marital difficulties which began prior to his work-related injury and for emotional distress from his wife's recent miscarriage.[2]

On November 21, 23 and 24, 1989, Claimant was brought to Mercy Catholic Hospital (Hospital) for treatment of the ingestion of alcohol and/or Phenobarbital. On November 21, 1989 while treating in the Hospital's Emergency Room (E.R.), Claimant refused further medical treatment and signed himself out of the hospital against medical advice (AMA). On November 23, 1989 Claimant again adamantly refused medical treatment and again signed himself out of the hospital AMA.

On November 24, 1989, E.R. physician, Dr. John Kelly, signed an application for involuntary examination and treatment under Section 301 of the Mental Health Procedures Act, 50 P.S. § 7301, committing Claimant to a psychiatric evaluation.[3] This evaluation was never completed.

The record reflects that some days later, from around 1:00 p.m. on the afternoon of December 18, 1989 until the early morning hours of that next day, December 19, 1998, Claimant, who at that time was living estranged from his wife and with a companion, Vicki Beaky (Vicki), consumed approximately one case of beer and a quantity of cocaine. Around 1:30 a.m., Claimant was arguing with Vicki for several hours over the fact that he and Vicki had airline tickets to fly to Las Vegas the next day and Claimant was not packed. Vicki feared Claimant was not going to take her with him.

Claimant then walked into the bedroom with a gun. Vicki heard Claimant emptying the bullets from the gun into what

1. The Workers' Compensation Act (Act) is the Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4; 2501–2626.
  Pursuant to the 1993 amendments to Section 401 of the Act, 77 P.S. § 701, "referees" are now called Workers' Compensation Judges and the Workmen's Compensation Appeal Board is now named the Workers' Appeal Compensation Board. *See*, Act of July 2, 1993, P.L. 190 (commonly known as Act 44).
  Even though this case was commenced prior to August 31, 1993, the effective date of the amendments, and the record uses both the terms "referee" and "judge" for the factfinder, we shall use the term workers' compensation judge (WCJ) for convenience and consistency.

2. WCJ found Claimant's treating physician, Dr. Suk Chang, Ph.D., M.D., credible. Dr. Chang testified that as Claimant's family doctor, he had been treating Claimant for alcoholism, prescribing Librium, Valium, Xanax and Dilantin for Claimant's tremors and other symptoms which are the result of alcohol withdrawal syndrome.

3. The Mental Health Procedures Act is the Act of July 9, 1976, P.L. 817, as amended, 50 P.S. §§ 7101–7503.

sounded like a glass ashtray. Claimant then came back into the room. Claimant placed one bullet in the gun, spun the chamber, put the gun to his head and pulled the trigger. The gun did not discharge. Claimant then pulled the trigger again and the gun discharged, shooting himself in the head and leaving him in a vegetative state from which he is unlikely to ever recover.

On June 4, 1990, Employer filed a Petition to Suspend Compensation and Review Medical Benefits, alleging disability changes that would have brought about a partial or complete recovery of Claimant's employment injury and which would have allowed him to return to light duty employment. Employer also alleged a voluntary withdrawal from the work force and a refusal of reasonable medical treatment.

By order dated June 17, 1992, WCJ denied Employers'·Suspension and Review Petitions and ordered that Claimant continue to receive his workers' compensation benefits. Employer appealed that decision to the Board, and the Board remanded to the WCJ, requesting additional findings of fact on the issues of Claimant's refusal of reasonable medical treatment and his voluntary removal from the work force by a self-inflicted head wound.

WCJ held additional hearings and proceedings and both Claimant and Employer entered into the record further expert medical testimony and other evidence. Based upon the additional testimony and evidence entered into the record, the WCJ found the testimony of Employer's witness, E.R. physician Dr. Kelly, credible and convincing in certain respects.[4] Additionally, WCJ found the testimony of Claimant's witness, Dr. Chang, credible and convincing in certain respects.[5] WCJ further found the testimony of Employer's witness, Dr. Spitz, credible and convincing in certain respects.[6]

By Order dated February 13, 1995 the WCJ made additional findings of fact and conclusions of law, finding that since December 19, 1989 reasonable medical treatment in the form of disc excision and fusion had been available to the Claimant which would have brought about partial to total recovery of Claimant's work-related back injury but that Claimant had not received the surgery for the seven months it was offered to him before he rendered himself ineligible to receive this medical treatment by shooting himself in the head. (RR at 6a.)

In addition, the WCJ made factual determinations surrounding Claimant's in-

4. WCJ found Dr. Kelly's testimony credible and convincing regarding the facts surrounding the repeated incidents of drug and alcohol ingestion and treatment, that Claimant was suicidal, and that Dr. Kelly treated Claimant for the repeated intoxication episodes, and that on the day prior to Dr. Kelly involuntarily committing Claimant for psychiatric treatment, that Claimant had refused treatment and signed himself out of the hospital against medical advice (AMA). Based on Dr. Kelley's credible and convincing testimony, WCJ further found that Claimant intentionally inflicted the gunshot wound to his head and that in doing so, Claimant intended to end his life. (2/13/95 WCJ FOF Nos. 12–22, RR at 4a–5a; supported by N.T. at RR at 135a–207a.)

5. WCJ found credible and convincing that Dr. Chang had been treating Claimant for alcoholism and marital difficulties since 1987, and that Claimant's marital difficulties increased as time passed, culminating on Au-

gust 3, 1989, when Claimant's wife sustained a miscarriage. WCJ also accepted the negative results of Claimant's brain scan and EEG as credible and convincing, based on Dr. Chang's testimony. (2/13/95 WCJ FOF Nos. 29–31 at RR 6a.)

6. WCJ accepted as credible and convincing Dr. Spitz's testimony (N.T. at RR 39a–134a) that after a review of Claimant's complete medical condition, there is a very high probability (95%), within a reasonable degree of medical certainty, that the disc excision and fusion surgery offered by Dr. Traiman would have brought about a partial-to-total recovery for Claimant's employment injury and that the surgery would relieve most, if not all, of Claimant's work-related disability. (2/13/95 WCJ .FOF Nos. 23–27 at RR 5a–6a) WCJ found Dr. Spitz credible when confirming that in Dr. Spitz's opinion, Claimant made numerous attempts to kill himself. (2/13/95 WCJ FOF No. 28 at RR 6a).

tent when inflicting the wound upon himself. WCJ found that, based upon the totality of the circumstances, Claimant's intention was NOT to proceed with medical treatment which would have decreased or eliminated his employment disability, but rather that Claimant was determined to take his own life. (2/13/95 WCJ FOF No. 32 at RR at 6a). Additionally, "Claimant's intention was NOT to return to any gainful employment, but rather [sic] to end his life." (2/13/95 WCJ FOF No. 33 at RR at 6a).

WCJ concluded, 1) that based upon the credible opinion of Dr. Spitz, the disc excision and fusion offered by Dr. Traiman was reasonable and 2) that Claimant's repeated suicide attempts (evidenced by the numerous visits to the Emergency Room for ingestion of drugs and alcohol), along with the final terminally self-inflicted injury, demonstrated that Claimant did not wish to reduce or cease his disability, and instead, Claimant intended to end his life. WCJ further concluded that, therefore, Employer satisfied its burden of proof under *Muse v. Workmen's Compensation Appeal Board and Western Electric Company*, 514 Pa. 1, 522 A.2d 533 (1987) that Claimant refused reasonable medical treatment.[7]

The WCJ, by Order dated February 13, 1995, granted Employer's Petition to Suspend Compensation Benefits. Claimant appealed this decision to the Board on the basis that Claimant did not refuse reasonable and necessary medical treatment, nor did Claimant intend to voluntarily remove himself from the workplace. The Board affirmed the WCJ's decision that Claimant refused reasonable medical treatment by not undergoing the surgery and that Claimant voluntarily removed himself from the workplace. This appeal follows.

Claimant now raises two issues for this Court's review. First, Claimant asserts that the WCJ erred by concluding Claimant intentionally inflicted injury to himself and thereby voluntarily removed himself from the work force. Secondly, Claimant contends that the WCJ erred by concluding that Claimant refused reasonable medical treatment.

Where both parties have presented evidence, as in this case, the appellate court's review on appeal is limited to determining whether the necessary findings of the WCJ are supported by substantial evidence of record, whether an error of law was committed or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corp.)*, 539 Pa. 333, 652 A.2d 802 (1995). Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Also, the party who prevailed before the WCJ is entitled to the benefit of all favorable inferences that can be drawn from the evidence. *Id.*

In support of his first issue, Claimant asserts that the WCJ erred as a matter of law in failing to apply the chain-of-causation test when determining whether such a self-inflicted injury would require forfeit of a right to continue receipt of workers' compensation benefits as required by *Globe Security Systems Co. v. Workmen's Compensation Appeal Board (Guerrero)*, 518 Pa. 544, 544 A.2d 953, 957 (1988), citing *McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services)*, 102 Pa.Cmwlth. 436, 518 A.2d 883 (1986).[8] Claimant's argument fails.

---

7. The Pennsylvania Supreme Court has stated, "Our decision in *Muse* held that a claimant's refusal of medical services constitutes a forfeiture of disability benefits under the Act." *Joyce Western Corp. v. Workmen's Compensation Appeal Bd. (Fichtorn)*, 518 Pa. 191, 197, 542 A.2d 990 (1988).

8. In *Globe*, a widow petitioned for fatal claims benefits after her husband became so despondent from the pain, impotence and emotional distress from the physical effects of his work-related injury that he committed suicide. *Globe* held that even though the Act prohibits the *awarding* of benefits from a self-

■ In order to prove that the self-inflicted injury occurred during an episode for which the employee was not legally responsible, Claimant must prove all three elements of the chain of causation test. *Halvorsen v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 159 Pa. Cmwlth. 35, 632 A.2d 973 (1993), *appeal denied*, 537 Pa. 636, 642 A.2d 488 (1994). The chain-of-causation test enunciated in *Globe* is a burden placed upon Claimant to prove that a self-inflicted injury which is otherwise not compensable under Section 301(a) of the Act,[9] becomes compensable because it was causally related to a pre-existing work-related injury.[10] This standard has been consistently applied to claims for an initial *award* of benefits but this is the first time that this concept has been raised with respect to the *suspension* of benefits.

Claimant is correct in asserting that in making a determination for suspending benefits due to a self-inflicted injury or suicide, that the chain-of-causation test should be applied. However, it is important to note that the WCJ, the Board or the courts will not reach that issue if the claimant, as in this instance, does not both allege and prove, to the WCJ, and if appealed, to the Board, the work-relatedness of the self-inflicted injury or suicide as enunciated in the chain-of causation test.

Once workers' compensation benefits have been awarded, Section 413 of the Act provides that benefits may only be modified upon the employer demonstrating that the disability has changed, or has temporarily or finally ceased.[11] The term "disability" has always meant "loss of earning power." Since the loss of earning power has only been compensable when it is work-related, when the loss of earning power is no longer work-related, then disability benefits under the Act should cease.

The seminal case dealing with the proof requirements for a party seeking to suspend, terminate or modify benefits was set forth by the Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa.

---

inflicted wound, the Commonwealth Court properly applied the three-prong "chain-of-causation" test enunciated in *McCoy* to determine whether or not the self-inflicted wound was causally related to an initial work-related injury. The *Globe* court further held that if the self-inflicted injury was causally related to an original work-related injury, then, in this case, death benefits could be *awarded*.

It is important to emphasize that the use of the word *awarded* substantially differentiates the facts and issues in the case *sub judice*, since the critical issue in the case before us is not the *awarding* of benefits, but is instead, the *suspension* of benefits.

9. Section 301(a) of the Act, 77 P.S. § 431 states, in pertinent part, that, "no compensation shall be paid when the injury or death is intentionally self-inflicted...."

10. Interestingly enough, the Act places the burden of proof on the employer to prove that the injury was intentionally self-inflicted in order to have the claim for benefits denied under this provision. Without anything further, once the Employer proves that the injury was intentionally self-inflicted, benefits under the Act must be denied. Therefore, in order

to bring the self-inflicted injury back into the compensable arena, the burden of proof necessarily shifts to the employee to prove all three elements of the *Globe* chain-of-causation test. The three elements of the chain-of-causation test which render an otherwise non-compensable self-inflicted injury compensable under the Act are:

1) the Claimant initially suffered a work-related injury as defined by section 301(c) of the Act, 77 P.S. § 411;
2) the initial work-related injury caused the Claimant to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and
3) this mental disturbance resulted in the self-inflicted injury or suicide. *Globe* at 518 Pa. at 552, 544 A.2d at 957.

By meeting the *Globe* chain-of-causation test and proving that the self-inflicted injury or suicide was caused by an overriding lack of judgment causally related to an initial work-related injury, the self-inflicted injury or suicide is then sufficiently connected to a work-related injury to become compensable under the Act.

11. 77 P.S. § 771.

240, 532 A.2d 374 (1987).[12] The Court has also held that the four-prong analysis of *Kachinski* is not to be rigidly applied to situations in which an employer seeks to suspend or terminate a claimant's benefits because the claimant's loss of earning power is no longer caused by the work-related injury. *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432 (1997). Under *Banic*, an employer is only required to demonstrate those factors which are relevant.[13] *Id. Banic* specifically delineates that where an employer seeks suspension of benefits because the claimant has voluntarily withdrawn from the workforce, an employer does not need to demonstrate that a claimant is physically able to work or that available work has been referred to a claimant. *Id.*

The Supreme Court has also held that, "it is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement.... For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related condition." *Southeastern Pennsylvania Transportation Authority [SEPTA] v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 78 669 A.2d 911, 913 (1995) [*compensation benefits suspended where the claimant voluntarily left the labor market by retiring*].

■ This rationale clearly articulates the test for determining a proper suspension of benefits when Claimant has removed himself from the workforce in any instance, including when he has inflicted a wound upon himself which renders him unable to continue working in any capacity at any job. In such an instance, when a claimant voluntarily removes himself from the labor market, i.e., when he intends an act that will preclude him from the possibility of earning income, such as retirement, or in this instance, rendering himself totally disabled, then, for disability compensation to continue, it is Claimant that must demonstrate that he is seeking employment after it is proven that he removed himself from the labor market, or, in the alternative, that he was removed from the labor market because of his work-related injury.

■ On this appeal, Claimant does not indicate, nor can the court find any instance in the very complete and voluminous record, where Claimant raised before the Board, and therefore preserved for appeal, the work-relatedness of Claimant's self-inflicted gunshot wound which was the culmination of a night of binge drinking and cocaine use. (*See* Claimant's Appeal to the Board at RR 32a–33a.) Claimant, therefore, is precluded from asserting this argument for the first time in this appeal. Pa. R.A.P. No. 1551.[14]

---

**12.** In order to meet the requirements for a modification of benefits under Section 413 of the Act, 77 P.S. §§ 771–774.2, *Kachinski* outlines the shifting burden to determine a modification of benefits:

1) Employer's proof of medical evidence of a change in the Claimant's condition;
2) Employer's proof of evidence of a referral to a then open job within the Claimant's functional capacities;
3) Claimant's demonstration that he has made a good faith effort to follow up on the referred jobs; and
4) If the referral fails to result in the job, the Claimant's benefits should continue.

**13.** Where, for instance, medical proof of a change in condition is not required when that is not the basis for seeking a decrease in benefits, *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)* 536 Pa. 490, 640 A.2d 386 (1994).

**14.** Pa. R.A.P. No. 1551, pertaining to review of governmental determinations and relating to "Scope of Review," provides that "review of quasijudicial orders shall be heard by the court on the record. No question shall be heard or considered by the court which was not raised before the government unit except questions involving the validity of a statute, the jurisdiction of the government unit over the subject matter or question which the court is satisfied that the petitioner, by the

However, in its review of whether or not benefits were properly suspended, the Court will consider whether or not Employer met its burden of proving conditions for a suspension, and then consider whether or not Claimant has met its burden to prove compensability. There is substantial evidence in the record that Employer met its burden of proof for a suspension of benefits, when it proved that the injury was self-inflicted. Claimant clearly presented no evidence, however, that Claimant's self-inflicted injury was causally connected to his work-injury.

■ Because the petition upon which the WCJ and the Board are acting is a petition to *suspend* benefits and not a petition to *award* benefits, in order for the chain-of-causation test to be applied by either the WCJ or the Board, once Employer meets his burden of proof for a suspension petition by proving Claimant voluntarily removed himself from the work force by a self-inflicted injury, then it is up to Claimant to, first, assert the work-relatedness of the self-inflicted injury and then to prove all three elements of the chain-of-causation test.

In the present instance, the record contains substantial evidence to support the conclusion that Claimant's gunshot wound was self-inflicted.

Claimant argues that the WCJ, in making his findings of fact, addressed activities which demonstrated that Claimant did not intend to reduce or cease his disability, but simply intended to end his life. This argument is not persuasive, especially since it is within the WCJ's responsibility as fact finder to determine both the intent of Claimant and causation.

■ A claimant's workers' compensation disability benefits must be suspended, even where the defendant has shown no work availability, where it has been established that the claimant has removed himself from the job market or has voluntarily retired. *SEPTA (Henderson)*.

exercise of due diligence, could not have

In the present case, the WCJ found that by inflicting a gunshot wound to his head which rendered him into a vegetative state, it was "the Claimant's intention NOT to return to any gainful employment, but rather to end his life." (Finding of Fact No. 33, R.R. at 6a.) By finding that Claimant intended not to return to any gainful employment, the WCJ essentially found that on December 19, 1989 Claimant had voluntarily removed himself from the job market.

Claimant maintains that it was Claimant's September 27, 1988 work-related back injury which caused Claimant to inflict the gunshot wound to his head and, therefore, under the chain-of-causation rule, Claimant did not voluntarily remove himself from the job market or forfeit his right to compensation benefits.

Claimant waived the chain-of-causation issue, however, by raising the issue for the first time in this Court. In the present case, Claimant did not raise that issue to the WCJ or during his appeal to the Board. Instead, the first time Claimant raised the issue that his self-inflicted head injury and resulting vegetative state was causally related to his September 27, 1988 work-related back injury was in his brief before this Court.

■ Legal issues and facts not presented to the WCJ or raised in an Appeal before the Workers' Compensation Appeal Board must be deemed waived and cannot be raised on appeal. *Smith v. Workmen's Compensation Appeal Board (Concept Planners & Designers)*, 543 Pa. 295, 670 A.2d 1146 (1995).

In any case, Claimant presented no medical evidence (including no psychiatric evidence) that there was any chain-of-causation that the September 27, 1988 work injury to his lower back directly caused Claimant to become dominated by a disturbance of mind of such severity as to override normal rational judgment. While it is Employer's burden to prove intentionally self-inflicted injury, *Garcia v. Workmen's*

raised with the lower tribunal."

*Compensation Appeal Bd.*, 503 Pa. 342, 469 A.2d 585 (1983), it is Claimant's burden to prove that the intentionally self-inflicted injury occurred during an episode for which he is not legally responsible, i.e. to prove the chain-of-causation test. *McCoy, supra.*

The evidence accepted as credible by the WCJ is substantial and supports the WCJ's finding that Claimant's self-inflicted gunshot wound to his head and resulting vegetative state was related to Claimant's problems with alcohol, marital problems and argument with his live-in girlfriend on December 19, 1989, and not to any pain or other sequellae of his injuries. The only evidence of record is that Claimant, without any complaint of pain or coercion, voluntarily loaded a gun, placed it to his head and squeezed the trigger not once, but twice. Employer has thus met its burden that the injury was self-inflicted.

On the other hand, Claimant has offered no credible evidence to support his burden that the self-inflicted injury occurred during an event for which he was not legally responsible. Therefore, under Section 301(a) of the Act, 77 P.S. § 431, no compensation shall be paid to Claimant because his injury was self-inflicted. It is not necessary to address Claimant's second issue.

Consequently, we affirm the WCJ and the Board who were not in error by concluding that Claimant forfeited his right to future compensation when he put himself into a vegetative state by a self-inflicted gunshot wound to the head.

### *ORDER*

NOW, April 7, 1999, the decision of the Workers' Compensation Appeal Board, No. A95–0655, dated April 28, 1997, is affirmed.

Judge LEADBETTER did not participate in the decision in this case.