Hillsborough
No. 80-059

R. WARREN PEASE

v.

TELEGRAPH PUBLISHING COMPANY, INC. & a.

February 23, 1981

*Malloy & Sullivan,* of Manchester (*David L. Broderick* orally), for the plaintiff.

*Hamblett & Kerrigan,* of Nashua (*John P. Griffith* orally), for the defendant Telegraph Publishing Company, Inc.

*Upton, Sanders & Smith,* of Concord (*Russell F. Hilliard* orally), for the defendant Philip Grandmaison.

KING, J. This is an appeal from a jury verdict for the plaintiff in his libel suit against the defendants, Telegraph Publishing Company, Inc., and Philip Grandmaison. The case concerned a letter to the editor submitted by Grandmaison and published in the *Nashua Telegraph,* a newspaper owned by Telegraph Publishing Company, Inc.

During the first part of a bifurcated trial the jury determined that the plaintiff was a public figure. The plaintiff does not appeal that finding, and he therefore must be deemed a public figure on appeal. In the second part of the trial, the jury returned a verdict of ten thousand dollars for the plaintiff against each defendant. Thereafter, the defendants moved for judgment notwithstanding the verdict, to set aside the verdict, and for remittitur. The Superior Court (*Flynn,* J.) denied all of these motions subject to the defendants' exceptions. The basis of these motions was that the statements in the letter to the editor were constitutionally protected opinions and that Pease had failed to present sufficient evidence of malice to submit the question to the jury. Because we hold that the statements were opinions and therefore within the first amendment protection, there is no need to consider whether the plaintiff established malice within the meaning of *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964).

On November 2, 1977, the *Telegraph* published a column about Grandmaison written by Merrill Lockhard, an employee of the newspaper. In the column, Lockhard wrote that Grandmaison, then an administrative assistant to the House Minority Leader of the New Hampshire Legislature, had engaged in certain wrongdo-

ing with regard to his alleged personal use of legislative license plates and mileage stipends. The next day, November 3, 1977, Grandmaison composed a seven-paragraph statement rebutting the charges made by Lockhard and dictated the statement to Kathleen Neff, a reporter for the *Telegraph*. Grandmaison demanded that the *Telegraph* publish his statement and that Lockhard prepare an immediate retraction of his charges or he would institute a libel action against the *Telegraph*.

That same day the *Telegraph* published Grandmaison's statement in its section of "Letters to the Editor." The first two paragraphs of the statement, which are the subject of this action, are:

> "To the Editor: While a student at the University of New Hampshire several years ago, I had the opportunity to witness what in my mind was the worst single example of a journalistic smear. That situation involved the appointment of Thomas Bonner as president of the university. The smear was conducted by R. Warren Pease of the Manchester Union Leader.
>
> While I certainly would not equate the significance of Pease's irresponsible journalism with the single opinion column of Merrill Lockhard's on Wednesday, November 2, I do feel he apparently is trying to deprive Mr. Pease of his own title as journalistic scum of the earth."

Grandmaison then went on to refute specifically the charges contained in Lockhard's column.

Pease, who was not involved in the controversy between Grandmaison and the *Telegraph*, demanded that the *Telegraph* publish an apology for the references to him. Failing to receive such an apology, Pease instituted the libel action which is the subject of this appeal.

■ At the conclusion of the plaintiff's case, and subsequent to the jury verdict, the *Telegraph* moved successively for a directed verdict and a judgment notwithstanding the verdict, based on the assertion that the words of which Pease complained were expressions of opinion as a matter of law and not actionable. On both occasions, the court refused to rule on the question as a matter of law, and denied the defendants' motions. In its instructions, the court charged the jury in part as follows:

> "Now, incidentally, there has been some discussion and argument regarding whether certain phrases or passages of the publication are statements of fact or

statements of opinion. A defamatory communication may consist of a statement in the form of opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as to the basis for the opinion, *so I leave it to you to decide whether the relevant phrases in Exhibit 1 were intended statements of fact or opinion.*"

(Emphasis added.) "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. [Footnote omitted.] But there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974). We adhere to that statement of the law.

■■ Whether an allegedly libelous statement is an opinion or an assertion of fact is a matter of law to be determined by the trial court in the first instance. *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601, 552 P.2d 425, 428, 131 Cal. Rptr. 641, 644 (1976); *Bucher v. Roberts*, 595 P.2d 239, 241 (Colo. 1979) (en banc); *Rinaldi v. Holt, Rhinehart*, 42 N.Y.2d 369, 381, 366 N.E.2d 1299, 1306, 397 N.Y.S.2d 943, 950, *cert. denied*, 434 U.S. 969 (1977); *cf. Letter Carriers v. Austin*, 418 U.S. 264, 282–84 (1974). Where, however, an average reader could reasonably understand the statement in either sense, the issue may properly be left to the jury's determination. *Thomson v. Cash*, 119 N.H. 371, 374, 402 A.2d 651, 653 (1979); *see Good Government Group v. Superior Court*, 22 Cal. 3d 672, 682, 586 P.2d 572, 576, 150 Cal. Rptr. 258, 262 (1978), *cert. denied*, 441 U.S. 961 (1979). This allocation of responsibility is analogous to that on the issue of whether a particular statement is defamatory. W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 111, at 747–48 (4th ed. 1971).

■ We conclude that the allegedly libelous statements contained in Grandmaison's letter could not reasonably be understood as assertions of fact. Grandmaison clearly prefaced two of his assertions with language such as "I do feel." The single allegation not so prefaced concerns the plaintiff's status as holder of the title "journalistic scum of the earth." "[E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered" the plaintiff's journalism deplorable, *Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 14 (1970), and not an assertion of fact. *See Myers v. Boston Magazine Co., Inc.*, 403 N.E.2d 376, 379–80 (Mass. 1980).

The plaintiff argues that, in this jurisdiction, the existence of facts that would entitle a defendant in a defamation action to the defense of privilege is a matter for the jury. In support of this position, the plaintiff relies upon *Thomson v. Cash supra; Supry v. Bolduc,* 112 N.H. 274, 293 A.2d 767 (1972); and *Jones v. Walsh,* 107 N.H. 379, 222 A.2d 830 (1966). None of these cases supports the plaintiff's position. Although each of these cases involved the applicability of a privilege, and in each case the existence of facts entitling the defendant to the privilege was left to the jury, the reason for leaving the issue with the jury was that the evidence was such that the issue could not be resolved as a matter of law. *See* 119 N.H. at 377, 402 A.2d at 653; 112 N.H. at 276, 293 A.2d at 769; 107 N.H. at 381, 222 A.2d at 832. Such is not the case here. The allegedly libelous statements of which the plaintiff complains were clearly opinions.

The plaintiff further argues that the statements were libelous, even though opinions, because the facts upon which the opinions were based were neither disclosed nor assumed, relying upon RESTATEMENT (SECOND) OF TORTS § 566 (1977). He contends that Grandmaison's assumption that the Bonner series lacked adequate verification and attribution were the undisclosed "facts" upon which he based his opinions and that, because these facts are false, the statements are libelous. Even if we were going to adopt the RESTATEMENT, we reject the plaintiff's argument.

 The letter to the editor fully disclosed the factual basis upon which Grandmaison formed his opinion. The letter stated that, while a student at the University of New Hampshire, Grandmaison had observed the plaintiff's coverage of the appointment of Thomas Bonner as head of that institution. These facts were shown to be true. The series of articles by the plaintiff was in the public domain, and anybody with sufficient interest could have reviewed it in order to determine whether they agreed with Grandmaison's opinion that the series constituted a smear campaign. *See Myers v. Boston Magazine Co., Inc.,* 403 N.E.2d at 379. Thus, the "facts" upon which Grandmaison formed his opinion were disclosed and the opinion does not imply other facts.

 Because we hold that the allegedly libelous statements of Grandmaison were opinions, the statements are protected. Therefore, the jury verdict for the plaintiff must be set aside.

*Reversed.*

All concurred.