Allegheny Ludlum Steel Corporation, Petitioner v. Workmen's Compensation Appeal Board (Fisher), Respondents.

Argued June 3, 1985, before Judges CRAIG and MACPHAIL, and Senior Judge KALISH, sitting as a panel of three.

*Raymond F. Keisling, Will & Keisling,* for petitioner.

*Richard A. Weisbord, Weisbord & Weisbord, P.C.,* for respondent, Betty Jane Fisher.

OPINION BY JUDGE MACPHAIL, September 4, 1985:

Allegheny Ludlum Steel Corporation (Employer) brings this appeal from a decision of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's award of benefits to Betty Jane Fisher (Claimant) as a result of the death of her husband, Somerton Fisher (Decedent).[1]

Decedent died on July 22, 1975, as a result of a self-inflicted gunshot wound. It appears that Decedent had worked for Employer for more than eighteen (18) years. At the time of his death, he was the shipping control clerk with the responsibility of

---

[1] Claimant had the burden of proof. Because she prevailed we must determine, *inter alia,* whether the referee's findings of fact were supported by substantial record evidence or whether there was any error of law. *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.),* 87 Pa. Commonwealth Ct. 436, 487 A.2d 477 (1985).

preparing documents to accompany materials ready for shipment to customers.

This Court has previously determined that suicide may be compensable pursuant to Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act),[2] provided the suicide is a direct result of a work-related mental illness. *University of Pittsburgh v. Perlman*, 49 Pa. Commonwealth Ct. 347, 405 A.2d 1048 (1980) *(Perlman)*. Work-related mental illness is an injury as defined by Section 301(c) of the Act. *Id.*

Psychiatric injuries pose a difficult problem for compensation authorities and the Courts.[3] "[T]he occurrence of the [psychiatric] injury and its cause must be adequately pinpointed." *Thomas v. Workmen's Compensation Appeal Board*, 55 Pa. Commonwealth Ct. 449, 455, 423 A.2d 784, 787 (1980) *(Thomas Atlantic Refining Co.)*. Furthermore, "stress-related psychiatric disorders are compensable only when they are based on something other than normal working conditions." *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 87 Pa. Commonwealth Ct. 436, 441, 487 A.2d 477, 480 (1985). There must be objective evidence that the injured employee's working conditions were other than normal; "actual, and not merely perceived or imagined, employment events" must have been the precipitating

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1).

[3] *See Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa. Commonwealth Ct. 558, 487 A.2d 1053 (1985), for a discussion of the development of the law relative to psychiatric injuries caused by mental stimuli, and a summarization of the cases which have facilitated this development. We are not concerned at present with those cases in which a psychiatric injury is caused by a physical trauma or stimulus nor with those in which a physical injury is caused by a mental stimulus.

factors. *Hirschberg v. Workmen's Compensation Appeal Board (Department of Transportation)*, 81 Pa. Commonwealth Ct. 579, 583, 474 A.2d 82, 85 (1984).

The record in the instant case was very carefully developed by counsel for both sides. Two psychiatrists testified, one for Claimant and one for Employer. There was substantial agreement between these experts as to Decedent's mental condition. Although neither expert had ever examined Decedent, both diagnosed him as suffering from an obsessional or compulsive personality. We are satisfied, therefore, that Decedent was suffering from a mental illness at the time of his death.

The major point of disagreement between the psychiatric witnesses was as to the principal cause of Decedent's suicide. While both experts agreed that Decedent was having difficulty coping with the force and pressure of his job, Claimant's expert opined that those factors caused Decedent to suffer a severe depression resulting in Decedent's irresistible need to destroy himself because he felt he was no longer adequate to do his job. Employer's expert, while conceding that Decedent's work-related stress was an internal problem for Decedent, was of the opinion that anxiety about an abscess appearing on his rectum which Decedent called to his wife's attention the evening of his death was the "most turgid and the most precipitating of a feeling of futility which could have been the straw that broke the camel (sic) and led to the suicide".

The referee, of course, determines the credibility of witnesses and the weight to be given to the evidence. Quite obviously, the referee here chose to give more weight to the testimony of Claimant's expert.

In the instant case, the referee's critical finding of fact was:

> The severe depression suffered by Decedent
> arose within the course of Decedent's employ-
> ment. . . . and was related thereto. As a direct
> result of the Decedent's depression caused by
> the stresses of his work environment, Decedent
> committed suicide on 7/22/75.

As we have noted, however, this Court has found psychiatric disorders to be compensable only when they are the result of something other than normal working conditions. The fact that the referee found that Decedent committed suicide as a result of the stresses of his work environment would not be sufficient to justify an award of benefits, therefore, unless that stress resulted from some abnormal or unusual happening or development at the workplace. In this regard, the referee found that during the last year of his employment, Decedent was depressed because (1) vacations were regarded by him as a penalty because his work accumulated during his absence (2) he no longer had a helper to assist him with his work and (3) there had been a changeover to computerization which increased the volume of his paperwork. The cumulative effect of those circumstances was to produce an abnormal working environment for the Decedent.

There is substantial evidence in the record to support those findings. In particular, Employer's psychiatric expert testified that apparently Decedent became "almost paranoid" about the pile of work that accumulated during the Decedent's last vacation. Claimant testified that on the Sunday immediately following a week of vacation from July 7-11, the Decedent worked ten hours and on the succeeding six days, he worked "long hours". Similar objective evidence exists with respect to the other two changes in working conditions. We readily conclude, as did

the referee, that the abnormal stresses of Decedent's working conditions in the last year of his employment were real and not something perceived or imagined by Decedent.[4]

Decedent's expert also testified that Decedent lost the capacity to think rationally so much so that his suicide was uncontrollable. In *Perlman* this Court said:

> [B]ecause the Decedent here, having suffered an injury within the meaning of the Act, took his life in an irrational frenzy as a direct result of the injury suffered, his widow is entitled to benefits.

49 Pa. Commonwealth Ct. at 353, 405 A.2d at 1051 (1980). We are well satisfied from our review of the record in the instant case that the two requirements set forth in *Perlman* for the widow's entitlement to benefits have been met.

The Board's order, accordingly, will be affirmed.

### ORDER

The order of the Workmen's Compensation Appeal Board dated March 8, 1984, No. A-84833, is hereby affirmed.

Senior Judge KALISH concurs in the result only.

Judge BARRY did not participate in the decision in this case.

---

[4] The Board incorrectly held that the mere fact that the Decedent's subjective attitude toward his work that made him think his work-load had increased even though it had not, was sufficient for a finding of a compensable injury.