Hayhurst, N.M.D. v. Timberlake        CV-94-199-SD  05/15/96
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Donald Hayhurst, N.M.D.

    v.                                          Civil No. 94-199-SD

Robert Timberlake, et al


                          O R D E R


    In this diversity action, plaintiff Donald Hayhurst has

lodged a complaint for libel, slander, and conspiracy against the

American Association of Naturopathic Physicians (AANP), the

Institute of Naturopathic Medicine (INM), the New Hampshire

Association of Naturopathic Physicians (NHANP), Robert

Timberlake, and James Sensenig.  Plaintiff alleges the named

defendants "deliberately, intentionally, and maliciously"

submitted materials to the New Hampshire Legislature and the

public that contain false statements attacking plaintiff's

credibility and background in the field of

naturopathy/naturopathic medicine.  Complaint ¶¶ 5, 8.

    Presently before the court are three motions for summary

judgment filed by the following defendants: (1) Timberlake as

agent for the AANP, Sensenig as agent for the AANP, and the AANP

(document 92); (2) Timberlake individually and as agent for the

INM and the NHANP, Sensenig individually and as agent for the INM and for the NHANP, and the INM (document 93) and (3) the AANP (document 95). When appropriate, the court will honor defendants' request that it treat the individual motions as being equally applicable to all defendants. Plaintiff has objected to all three motions (documents 97, 98, 99, 100). Also before the court are two reply memoranda (documents 101, 102) filed by various defendants, and plaintiff's response thereto (document 103).

<u>Background</u>[1]

Donald Hayhurst, N.M.D., himself a practitioner of naturopathy,[2] has a history of opposing legislation designed to

---

[1]The recitation within this section treats the evidence in a light most amiable to the nonmoving party, the plaintiff. However, the court disregards any factual statement made by either party on any disputed issue where such statement is not properly substantiated, by affidavit or otherwise. It must be further noted that in his memorandum of law in opposition to defendants' motions for summary judgment, plaintiff neglects to provide, in any form, a short and concise statement of material facts, supported by appropriate record citations, as to which he contends a genuine issue of fact exists so as to require a trial. <u>See</u> Local Rule 7.2(b)(2). As a result, the court has been constrained to infer plaintiff's version of the disputed facts from the isolated references to the record contained in his legal argument as well as from the court's own piecing together of various exhibits.

[2]The field of naturopathy involves the treatment of disease with natural remedies such as herbs, vitamins, and/or salts, and may also involve certain physical manipulations. <u>See</u> WEBSTER'S

2

impose licensing requirements on naturopathic physicians.[3]  <u>See</u> Deposition of Donald C. Hayhurst, N.M.D., at 268 (attached to documents 93, 101).  Beginning in or about 1993, Hayhurst began sending letters to New Hampshire legislators recording his opposition to a proposed statute (House Bill No. 451-FN) which, among other things, required that doctors of naturopathy be licensed by a state board.[4]  Hayhurst Deposition at 269; Wheeler Affidavit ¶ 3.

The AANP and the INM (neither of which should be confused with Hayhurst's organization, the ANMA) both have supported the imposition of licensing requirements.  In the spring of 1994, two legislators sponsoring the bill asked Robert Timberlake, a consultant and lobbyist for the AANP, to submit materials concerning Hayhurst's credentials to the New Hampshire Legislature.  <u>See</u> Affidavit of Robert Timberlake ¶¶ 2-5 (attached as Exhibit C to document 100); Affidavit of Rep. Mary C. Holmes ¶ 7 (attached as Exhibit G to document 100); Wheeler Affidavit ¶ 6.  Timberlake submitted a deposition transcript and a report from a

---

THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 1508 (1969).

[3]Hayhurst has also been (and may now continue to be) President of the American Naturopathic Medical Association (ANMA).  <u>See</u> Complaint ¶ 5.

[4]The New Hampshire Legislature eventually passed House Bill No. 451-FN.  <u>See</u> Affidavit of Rep. Katherine Wheeler (attached as Exhibit H to document 100).

3

sheriff's office to both legislators, Mary C. Holmes and Katherine Wheeler. See Holmes Affidavit ¶ 8; Wheeler Affidavit ¶ 7.

Hayhurst claims in his complaint that Timberlake provided the New Hampshire Legislature with a copy of the spring 1990 edition of The AANP Quarterly that contained a special report entitled "Who is Don Hayhurst?" See Complaint ¶ 8; AANP Quarterly (attached as Exhibit I to document 100). The article accuses Hayhurst of, among other things, falsely claiming attendance at the UCLA Medical School, obtaining degrees from an unaccredited university, and forfeiting the right to practice naturopathy in Nevada. However, neither Representative Wheeler nor Representative Holmes recalls receiving a copy of the article from Timberlake. See Holmes Affidavit ¶ 9; Wheeler Affidavit ¶ 8.

On another occasion, this time on April 30, 1993, Timberlake told Patricia DeSilvio, N.D., that Hayhurst is a fraud with no credentials and offered to provide supporting documentation, which DeSilvio later obtained from the state. See Affidavit of Patricia DeSilvio, N.D. ¶¶ 4-6 (attached as Exhibit B to document 100). Other than stating that the materials were "available to the public," DeSilvio provides no further description of the documents, nor does she specify which agency or department of the

4

"state" provided same.  See DeSilvio Affidavit ¶ 6.  On the same day of the conversation with DeSilvio, Timberlake also informed Lina C. Palmacci, R.N., N.D., that Hayhurst was a "quack" who had acquired a degree from an unaccredited school with inadequate educational standards.  See Affidavit of Lina C. Palmacci (attached as Exhibit E to document 100).

## Discussion

### 1.   Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s]

essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.

2. Defamation

To establish defamation, a plaintiff must generally show that "a defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118, 635 A.2d 487, 492 (1993) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977); 8 Richard B. McNamara, New Hampshire Practice, Personal Injury, Tort and Insurance Practice § 2 (1988)). A statement is defamatory if it tends "'to

6

lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority.'" Riblet Tramway Co. v. Ericksen Assocs., Inc., 665 F. Supp. 81, 84 (D.N.H. 1987) (quoting Morrissette v. Cowette, 122 N.H. 731, 733, 449 A.2d 1221, 1221 (1982)) (internal quotation omitted).

Statements alleged to be defamatory should be considered in the context of the publication taken as a whole. Duchesnaye v. Munro Enters., 125 N.H. 244, 249, 480 A.2d 123, 125 (1984). The expression of an opinion can serve as the basis for a defamation claim when the statement reasonably implies the existence of nondisclosed defamatory facts, see Nash v. Keene Publishing Corp., 127 N.H. 214, 219, 498 A.2d 348, 351 (1985), and it is actually understood that way, Duchesnaye, supra, 125 N.H. at 249, 480 A.2d at 125.

An opinion, no matter how pernicious it may seem, is not defamatory, however, if it is apparent from the surrounding context that the opinion is based on disclosed facts that are not, in and of themselves, defamatory. Milkovich v. Lorain Journal Co. 497 U.S. 1, 21 (1990); Nash, supra, 127 N.H. at 219, 498 A.2d at 351; Pease v. Telegraph Pub. Co., 121 N.H. 62, 65-66, 426 A.2d 463, 465 (1981). It is for the court, in the first instance, to determine whether a defendant, in stating an

7

opinion, has implied an actionable statement of fact.  <u>Nash</u>, <u>supra</u>, 127 N.H. at 219; <u>Pease</u>, <u>supra</u>, 121 N.H. at 65, 426 A.2d at 465.

Defendants argue they are entitled to summary judgment with respect to the defamation claims on the following grounds: (1) plaintiff cannot establish that Timberlake published the alleged defamatory material to the state legislature; (2) defendants are absolutely immune regarding statements submitted to the New Hampshire Legislature; (3) plaintiff's claims are barred by the doctrine of release; (4) plaintiff's claims are barred by the statute of limitations; and (5) defendants are qualifiedly immune because plaintiff is a limited-purpose public figure and cannot establish that defendants acted with actual malice.[5]

### a.  Publication of the AANP Quarterly Article to the New Hampshire Legislature

Defendants argue they are entitled to summary judgment as plaintiff cannot establish that defendants published the "Who is Don Hayhurst?" article to either Representative Holmes or

---

[5]As the court finds that certain of these arguments dispose of the issues presently in dispute, the court will not address defendants' remaining arguments at this time.  The decision to pass over such areas should not be interpreted as an indication of their respective merits.

8

Representative Wheeler.  To support this contention, defendants attach affidavits of both legislators stating they do not recall receiving such material from Timberlake.  Plaintiff maintains he has submitted evidence that Timberlake made other defamatory statements to the legislators and other individuals.  Plaintiff's argument, being essentially nonresponsive, fails to show the existence of a material issue of fact.  Accordingly, the alleged publication of the AANP Quarterly article to the legislators cannot form the basis of plaintiff's defamation claim.

b.  Publication of the Deposition Testimony and the Sheriff's Report to the New Hampshire Legislators

Defendants argue that any communications they did actually publish to the New Hampshire legislators are absolutely privileged because they were made in the course of a legislative proceeding.  As absolute privileges protect individuals absolutely, irrespective of whether they acted in bad faith, it is understandable why defendants would seek protection of such immunity.

This court need not resolve whether New Hampshire would recognize such an absolute privilege in the instant situation, however, because the statements made to the legislators are protected, at a minimum, by a conditional privilege.  Under New

9

Hampshire law, a conditional or qualified privilege applies to statements published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief founded on reasonable grounds of their truth--provided that the statements are not made with actual malice. Simpkins v. Snow, 139 N.H. 735, 740, 661 A.2d 772, 776-77 (1995) (citing Chagnon v. Union Leader Corp., 103 N.H. 426, 437, 174 A.2d 825, 832 (1961), cert. denied, 369 U.S. 830 (1962)); Pickering v. Frink, 123 N.H. 326, 329, 461 A.2d 117, 119 (1983).

To establish actual malice, a plaintiff must show that defendant acted either with knowledge of the falsity of his communications or with "a reckless disregard for truth or falsity." Nash, supra, 127 N.H. at 222, 498 A.2d at 354 (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)). Reckless disregard requires more than mere negligence in verifying statements. Id. at 223, 498 A.2d at 354. Moreover, failure to investigate the truthfulness of a statement, by itself, will not suffice to establish that defendant acted in bad faith. Rather, there must be proof of a "'high degree of awareness of . . . probable falsity . . . .'" Id. (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964), overruled on other grounds by Brown v. Louisiana, 388 U.S. 130, 134 (1966)). The evidence should show that the defendant "'in fact entertained

10

serious doubts as to the truth of his publication.'" Id.
(quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)).[6]

Although the issue of actual malice is a difficult one that does not readily lend itself to summary disposition, a plaintiff must submit "at least some affirmative circumstantial evidence from which malice could be inferred." Nash, supra, 127 N.H. at 224, 498 A.2d at 354; 10A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2730, at 238, 245 (2d ed. 1983). Generally, a plaintiff's showing can survive summary judgment if it suggests the existence of obvious reasons for the defendant to have

---

[6]This standard is actually more generous to plaintiff than that to which he is likely entitled, given that defendants were at the time engaged in petitioning the New Hampshire Legislature. Although the New Hampshire Supreme Court has opined that the privilege attached to the right to petition is not absolute, in certain circumstances the privilege goes beyond that which is normally associated with a qualified or conditional privilege. See Pickering, supra, 123 N.H. at 330-31, 461 A.2d at 120. That is, in certain settings, a showing of actual malice will not suffice, and instead the plaintiff must establish that the defendants had knowledge of the falsity of their statements of fact. Id. For example, the knowledge-of-falsity standard applies to a defamation action concerning statements made in a petition for the removal of a public official. Id. Whether such would be the standard applicable to all statements published to the state legislature is an open question in New Hampshire. However, given New Hampshire's expressed policy of protecting the integrity of state legislative bodies, see Keefe v. Roberts, 116 N.H. 195, 198, 355 A.2d 824, 827 (1976); New Hampshire Constitution pt. 1, art. 30, the New Hampshire Supreme Court would likely at least require that the plaintiff show defendants had knowledge of the falsity of their statements before recovery for defamation is possible in the instant situation.

11

doubted the veracity of his informant or the accuracy of his reports. Nash, supra, 127 N.H. at 224, 498 A.2d at 355.

Plaintiff neglects to even mention in his complaint that Timberlake submitted deposition testimony and a sheriff's report to the legislature. Moreover, plaintiff fails to identify in any subsequent submissions which statements in the deposition testimony or the sheriff's report he claims are defamatory. The court will brush this aside for the moment, however, to examine the question of whether the statements are conditionally privileged. The undisputed evidence establishes that any statements present in the materials submitted to the legislature by the defendants were made on a lawful occasion, in good faith, for a justifiable purpose and with a belief founded on reasonable grounds of their truth. As the affidavits of both state legislators show, Timberlake submitted the accused materials, the deposition testimony of Michael Brenay and a sheriff's report, only after the legislators first requested that he provide them with information concerning Hayhurst's credentials. As the legislature was considering at the time what, if any, standards should be imposed on the practice of naturopathy, the materials requested directly related to a legislative purpose.

In addition, Timberlake states in his affidavit that he submitted such material with the belief that the statements

12

contained therein were true. Indeed, it appears reasonable that Timberlake would believe that deposition testimony provided in connection with a case pending in the United States District Court for the District of Nevada and the sheriff's report were credible--there is no obvious quality inherent to deposition testimony or a sheriff's report that should cause Timberlake to immediately doubt their veracity. Moreover, even if plaintiff's unsupported representation that the deponent is a convicted felon turns out to be true, plaintiff provides no evidence--or even a bare allegation--suggesting Timberlake was aware of the conviction, much less the falsity of his statements.

Furthermore, plaintiff has failed to submit affirmative circumstantial evidence from which defendants' malice could be inferred. Plaintiff's primary evidence that the materials submitted to the legislature were published with actual malice is that at a meeting of the AANP Board of Directors, the members agreed that the "AANP and [its] agents would stop circulating rumors and untruths concerning Donald Hayhurst." See Hastings Affidavit ¶¶ 6, 7 (attached as Exhibit F to document 100). Both Timberlake and Sensenig were present at said meeting. See id. at ¶¶ 10, 13. As plaintiff neglects to identify which "rumors" concerning Hayhurst were said to be untruthful and who circulated the rumors, plaintiff's evidence fails to present an obvious

13

reason for Timberlake to doubt the accuracy of the particular materials he subsequently submitted to the legislators.

Plaintiff further asserts that Timberlake's statements to Palmacci and DeSilvio indicate actual malice toward Hayhurst. However, nothing contained therein indicates that Timberlake in fact entertained serious doubts about the truthfulness of the statements published to the legislature. Accordingly, there being no disputed issue as to whether Timberlake was motivated by actual malice, the statements made to the legislators are conditionally privileged.[7]

c. Statements to Palmacci

Plaintiff claims that certain statements made by Timberlake to Palmacci defamed him, including the statement that Hayhurst is a "quack" who acquired a useless degree from an unaccredited school. Palmacci Affidavit ¶ 2. However, in the same conversation, Timberlake indicated to Palmacci that by "unaccredited" he meant a school not accredited by the Council on

_____

[7]Contrary to plaintiff's contentions, this privilege would not be disturbed by Timberlake's publication of the material outside of the legislature. If such evidence existed, plaintiff could pursue a claim only insofar as the statements were published outside the legislature. Cf. Lunderstadt v. Colafella, 885 F.2d 66, 73-78 (3d Cir. 1989) (although testimony to legislative committee was protected by testimonial privilege, statements at press conference could be subject to suit).

14

Naturopathic Medical Education (CNME). Id. Indeed, upon questioning Timberlake, Palmacci learned that even the school of naturopathy from which she herself graduated would not be considered "accredited" by Timberlake. Id. Furthermore, from a letter written by plaintiff, it appears true that he did not graduate from one of the schools accredited by the CNME. See Letter of Donald Hayhurst, N.M.D., to Representative Alice Ziegra (attached as Exhibit G,3 to Document 100). The CNME had, at the time, approved only Bastyr College and the National College, neither of which had been attended by Hayhurst. Accordingly, as Timberlake's expressed opinion that Hayhurst is a "quack" rested on disclosed nondefamatory facts that could not have been reasonably understood to be defamatory, the statements made to Palmacci cannot serve as the basis of plaintiff's defamation claim.

### d. Statements to DeSilvio

Finally, in his objection to the summary judgment motion, plaintiff contends for the first time that Timberlake defamed him by making certain statements to DeSilvio. Here, plaintiff fails to provide the full context of the statements made by Timberlake. In the interest of fairness to all parties, and in recognition of the fact that plaintiff was acting pro se at the time he filed

15

his complaint, the court will grant plaintiff leave to move to amend his complaint solely in order for him to flesh out his claim based on the alleged statements made by Timberlake to DeSilvio.

Plaintiff should be mindful that under the Federal Rules of Civil Procedure the allegedly actionable statements should be set forth with sufficient particularity to afford defendants notice of his claim. Nanavati v. Burdette Tomlin Memorial Hosp., 857 F.2d 96, 109 (3d Cir. 1988); Jones v. Capital Cities/ABC, Inc., 874 F. Supp. 626, 628 (S.D.N.Y. 1995) (even complaint filed by pro se plaintiff must provide defendants with adequate basis to discern defamation claim); Rule 8, Fed. R. Civ. P. Although plaintiff need not plead the exact words alleged to be defamatory, see Kalika v. Stern, 911 F. Supp. 594, 603 (E.D.N.Y. 1995), defendants must still be given sufficient notice to enable them to defend themselves. If it appears that an amendment would be futile, the court may deny plaintiff's request to amend. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990).

3. Conspiracy

Plaintiff claims that a nationwide conspiracy existed between the defendants and others "to undermine and defame Dr.

16

Hayhurst in every area of the country." Plaintiff's Memorandum in Support of Objection at 26.

A civil conspiracy involves concerted action among two or more persons to accomplish an unlawful purpose. <u>Jay Edwards, Inc. v. Baker</u>, 130 N.H. 41, 47, 534 A.2d 706, 709 (1987). To establish civil conspiracy, a plaintiff must prove the following elements: (1) two or more persons (including corporations); (2) an unlawful object (or a lawful object to be achieved by unlawful means); (3) an agreement on the object or the course of action; (4) one or more unlawful overt acts; and (5) resulting damages. <u>Id.</u>; <u>University System of N.H. v. United States Gypsum</u>, 756 F. Supp. 640, 652 (D.N.H. 1991).

The existence of an underlying tort which the alleged conspirators agreed to commit is essential to the maintenance of a claim for conspiracy. <u>United States Gypsum</u>, <u>supra</u>, 756 F. Supp. at 652. "The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff." W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 46, at 323 (5th ed. 1984) (internal quotation omitted).

Given that defendants are entitled to summary judgment concerning the statements currently serving as the basis of plaintiff's defamation claims, they are likewise entitled to summary judgment on plaintiff's conspiracy claim insofar as it

17

derives from said statements.

Conclusion

For the reasons set forth herein, the court conditionally grants the defendants' motions for summary judgment (documents 92, 93, 95) and gives the plaintiff leave to submit a motion to amend his complaint to state a claim solely based on Timberlake's statements to DeSilvio. The statements to Representative Holmes and Representative Wheeler as well as those to Palmacci cannot form the basis of plaintiff's claims.

Should plaintiff elect to file a motion to amend, he should include a short and concise statement of the precise defamatory statement(s) forming the basis of his claims. In crafting his factual allegations, plaintiff is reminded to remain faithful to Rule 11, Fed. R. Civ. P., as well as to any relevant legal doctrines, particularly those set forth in this order. Finally, plaintiff's Motion to Rule on Outstanding Motions (document 105) is denied as moot.

Plaintiff has until May 28, 1996, to file his motion to amend. Defendants' objection should be filed by June 14, 1996.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 15, 1996

18

cc: Linda A. Theroux, Esq.
Roger Hooban, Esq.
Gary M. Burt, Esq.
Paul R. Kfoury, Esq.
Robert A. Backus, Esq.