Palmer v. Smith                          CV-95-598-SD  12/24/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE

B. Irene Palmer;
Donald R. Palmer

        v.                              Civil No. 95-598-SD

David Smith;
Sowerby Health Care, Inc.;
Pheasant Wood Nursing Home, Inc.;
Richard Daigle;
Police Office Bruce McCall


                          O R D E R


     In this civil action, plaintiff B. Irene Palmer brings

claims pursuant to 42 U.S.C. § 1983 and numerous state laws

arising from treatment she received while working at Pheasant

Wood Nursing Home, Inc., in Peterborough, New Hampshire.[1]  More

specifically, Palmer, a former medical records clerk and ward

clerk, alleges that David Smith, an administrator at Pheasant

Wood, committed a number of egregious acts against her over a

year's time, culminating in a episode in which he staged her

arrest in front of her co-workers.

     Presently before the court is a motion for partial summary

---

[1]Also included in the complaint is a claim for loss of
consortium brought by plaintiff's husband, Donald R. Palmer.

judgment brought by defendants Sowerby Health Care, Inc. and the nursing home (document 55) and a motion for summary judgment filed by defendant Bruce McCall (document 50). Plaintiff objects to both motions.

Background

In March of 1994, when David Smith was first hired as the administrator of the Pheasant Wood Nursing Home, he placed a telephone call to B. Irene Palmer, a veteran employee of seventeen years. After identifying himself, he breathed heavily into the telephone. Complaint ¶ 21. When later confronted by Palmer, he informed her that he "just wanted to give an old lady a thrill." Id.

At a business meeting held at the corporate office of Sowerby Healthcare, Inc., the next month, an employee (apparently of the Home) displayed on the overhead projector a photograph of Palmer holding a "vegetable penis". Id. ¶ 23. The photograph had been taken at a December 1993 Christmas party of the Home, at which Palmer had been given a shoe box containing the item, which consisted of a vegetable shaped like a penis that had been decorated with whipped cream on one end and a hair net on the other. Id. ¶ 17. Dwight Sowerby, owner of Sowerby Healthcare, laughed at the picture and did not try to stop the display. Id.

2

¶ 24.

When Palmer returned to the Home, Smith asked her if anything "unusual" had occurred at the meeting, and she replied in the negative. Id. ¶ 26. He then responded that he was going to post a blow-up of the photograph on his office wall, which he in fact later did. Id. ¶¶ 27, 28. Smith also showed the picture, mounted on the back of a piece of carpet, to other individuals at the Home. Id. ¶ 29. In addition, in June of 1994, Palmer witnessed Smith showing a volunteer the photograph and remarking, "Now we know what her mouth is full of." Id. ¶ 34.

Palmer asked Smith on numerous occasions to destroy the photograph. He refused, telling her that he would continue showing it to staff members. Id. ¶ 30. Furthermore, the senior administrator told Smith to get rid of the photograph, but he did not comply. Id. ¶¶ 32, 33.

On March 31, 1995, Smith paged Palmer over the intercom and asked that she come to his office. Id. ¶ 35. When Palmer arrived, Richard Daigle, a bailiff from the Jaffrey-Peterborough District Court, and Bruce McCall, a Peterborough police officer, were present. Id. ¶ 37. Palmer knew that Daigle's mother-in-law was a resident of the Home, and assumed there was a billing problem. Id. ¶ 38. Daigle, with his gun and badge showing,

3

moved toward Palmer and said, "I hate to do this but it is my job. I have to take you out of here in handcuffs. I have been ordered by the Court to take you downtown." Id. ¶ 39. When Palmer asked Smith what was happening, he replied that he did not know. Id. ¶ 40. Daigle said it had something to do with Medicaid fraud. Id.

Daigle escorted Palmer and Smith to the front desk of the Home, where he handcuffed Palmer to Smith. Id. ¶ 41. Palmer was then taken by Daigle out the front door, past McCall, who was standing at the door in an "authoritative" stance, to a police cruiser. Id. ¶ 42. As Palmer was about to be placed in the car by Daigle, other employees of the Home snapped photographs. Id. ¶ 43. Smith then informed Palmer that the whole incident had been a "joke". Id. ¶ 44.

After the arrest incident, Palmer continued to come to work, but she complained about the actions of those involved. Id. ¶ 47. Smith told her, "What goes around . . . comes around. If you go to see the Police Chief, trouble could be made for you." Id. Palmer resigned on June 30, 1995. Id. ¶ 48.

Discussion

1. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine

issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case."  Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986).  It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'"  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).  Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party."  Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences

5

in the non-moving party's favor.  <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255.


<u>2.  Defamation Claim Against Defendant McCall: Count VIII</u>

To establish defamation, a plaintiff must generally show that "a defendant failed to exercise reasonable care in pub lishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." <u>Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc.</u>, 138 N.H. 110, 118, 635 A.2d 487, 492 (1993) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977); 8 Richard B. McNamara, <u>New Hampshire Practice, Personal Injury, Tort and Insurance Practice</u> § 2 (1988)).  A statement is defamatory if it tends "'to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority.'"  <u>Riblet Tramway Co. v. Ericksen Assocs., Inc.</u>, 665 F. Supp. 81, 84 (D.N.H. 1987) (quoting <u>Morrissette v. Cowette</u>, 122 N.H. 731, 733, 449 A.2d 1221, 1221 (1982)) (internal quotation omitted).

Statements alleged to be defamatory should be considered in the context of the publication taken as a whole.  <u>Duchesnaye v. Munro Enters.</u>, 125 N.H. 244, 249, 480 A.2d 123, 125 (1984).  The expression of an opinion can serve as the basis for a defamation

6

claim when the statement reasonably implies the existence of nondisclosed defamatory facts, see Nash v. Keene Publishing Corp., 127 N.H. 214, 219, 498 A.2d 348, 351 (1985), and it is actually understood that way, Duchesnaye, supra, 125 N.H. at 249, 480 A.2d at 125.

An opinion, no matter how pernicious it may seem, is not defamatory, however, if it is apparent from the surrounding context that the opinion is based on disclosed facts that are not, in and of themselves, defamatory. Milkovich v. Lorain Journal Co. 497 U.S. 1, 21 (1990); Nash, supra, 127 N.H. at 219, 498 A.2d at 351; Pease v. Telegraph Pub. Co., 121 N.H. 62, 65-66, 426 A.2d 463, 465 (1981). It is for the court, in the first instance, to determine whether a defendant, in stating an opinion, has implied an actionable statement of fact. Nash, supra, 127 N.H. at 219; Pease, supra, 121 N.H. at 65, 426 A.2d at 465.

Defendant McCall argues he is entitled to judgment as a matter of law as to the defamation claim against him because plaintiff has not alleged that McCall made any false statements about her. Plaintiff responds that evidence that McCall placed her under false arrest in a public setting, among her colleagues, was a defamatory "act" for purposes of the tort.

New Hampshire does not appear to require that a defamatory

7

"statement" be based on verbal communication, rather than on a physical act. At least one other jurisdiction has found that verbal communication is not necessary, so long as the conduct is understood by an observer as being defamatory in meaning and in its application to the plaintiff. See Jones v. Johnson & Johnson, 1995 WL 549042 (E.D. Pa. Sept. 13, 1995) (citing, inter alia, Doe v. Kohn Nast & Graf, P.C., 862 F. Supp. 1310, 1327 (E.D. Pa. 1994)). This court is of the opinion that such is a proper interpretation of the tort of defamation.

In support of her objection, plaintiff submits evidence that McCall drove his cruiser to the nursing home and opened the back door. See Deposition of Bruce McCall at 16 (attached to plaintiff's objection). He then stood in the doorway to the nursing him in full uniform and witnessed Palmer being handcuffed by defendant Daigle, see id. at 26, 31-33, and opened the door as Palmer was taken out, see id. at 32. Palmer was then led in the general direction of the police cruiser. Further evidence indicates that Daigle specifically told McCall where to stand and what to do ahead of time. See Deposition of Richard Daigle at 68 (attached to plaintiff's objection).

The court considers this to be an extremely appropriate situation to extend the term "statement" in the defamation context to a defendant's nonverbal conduct. By his actions,

8

McCall conveyed the same information he would have communicated had he shouted to the onlookers that Palmer was being arrested or had he worn a placard about his neck stating the same. Accordingly, as defendant's alleged conduct may have signaled to observers that plaintiff had committed a criminal act, the court finds that defendant is not entitled to summary judgment on this claim.

### 3.  Battery Claim Against McCall: Count XI

To prove the tort of battery under New Hampshire law, plaintiff must show that defendant intentionally touched her and that the touching resulted in harm.

Plaintiff admits that McCall "did not actually touch plaintiff," Plaintiff's Memorandum at 9, but claims that McCall "aided, promoted, and conspired to commit a battery" against her, id.

In New Hampshire, a civil conspiracy occurs when two or more persons combine to accomplish an unlawful purpose or to accomplish some purpose not in itself unlawful by unlawful means. See Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987).  The tort of civil conspiracy has the following elements:

> (1) two or more persons (including corporations);
> (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or

9

> unlawful means or a lawful object to be achieved
> by unlawful means); (3) an *agreement* on the object
> or course of action; (4) one or more unlawful
> overt acts; and (5) damages as the proximate
> result thereof.

Id.

The court agrees with plaintiff that when her battery claim is construed as one for conspiracy to commit a battery, plaintiff has stated a claim. Furthermore, plaintiff has submitted evidence sufficient to create an issue of material fact on each element of this tort. Therefore, defendant McCall is not entitled to summary judgment on plaintiff's battery claim when it is so construed.

4. False Arrest in Violation of 42 U.S.C. § 1983 Against Defendant McCall: Count III

McCall argues he is entitled to summary judgment on plaintiff's false arrest claim, brought under 42 U.S.C. § 1983, because there is no evidence that he effected an "arrest" on her.

The court's review of the evidence, however, reveals that it is sufficient to create a genuine issue of material fact as to whether McCall participated in plaintiff's unlawful arrest. McCall aided Daigle by positioning his cruiser in a good location and by holding the doors as Palmer was escorted out. Accordingly, McCall is not entitled to summary judgment on

10

plaintiff's section 1983 claim.

## 5.  Wrongful Discharge: Count XXI

Defendant Sowerby Healthcare argues it is entitled to summary judgment on plaintiff's wrongful discharge claim because there is an absence of evidence of an employment relationship between Palmer and the defendant.  Plaintiff does not dispute the absence of an employment relationship between her and Sowerby, but claims that Sowerby made her workplace situation intolerable by failing to fulfill its duties to remedy her situation.  Plaintiff does not provide any authority to support that a constructive discharge claim is proper against one who does not function as plaintiff's employer, nor is the court aware of any such authority.  Accordingly, as the court is unwilling to extend New Hampshire law in this direction without guidance from the Supreme Court of New Hampshire, judgement is entered in favor of Sowerby Healthcare on plaintiff's claim of wrongful discharge.[2]

Defendant Pheasant Wood makes two additional assaults on plaintiff's wrongful discharge claim, both of which contain some

_____

[2]Plaintiff contends that entry of summary judgment would be premature because she expects that the fruits of discovery may rescue her claim.  However, the absence of an affidavit drafted pursuant to Rule 56(f), Fed. R. Civ. P., is fatal to her position.

11

merit.  First, defendant argues that the claim is preempted by the New Hampshire Workers' Compensation Law, New Hampshire Revised Statutes Annotated (RSA) 281-A:8 to the extent plaintiff seeks personal injury damages arising from her discharge.  The court agrees.  See Kopf v. Chloride Power Electronics, Inc., 882 F. Supp. 1183, 1190-91 (D.N.H. 1995).  Accordingly, plaintiff's wrongful discharge claim is dismissed to the extent it seeks damages for personal injuries.

Next, the court agrees that to the extent plaintiff's constructive discharge claim is premised on the same facts underlying her claims brought pursuant to Title VII, 42 U.S.C. § 2000-e, et seq., of the Civil Rights Act of 1964, her claim for wrongful discharge must fail.  See Smith v. F.W. Morse & Co., 76 F.3d 413, 428-29 (1st Cir. 1996).  Given that Title VII not only "codifies the public policy against gender-based discrimination . . . but also creates a private right of action to remedy violations of that policy," see id. at 429, a private action for wrongful discharge based on the same facts cannot lie.  However, defendant has conspicuously failed to acknowledge that plaintiff's wrongful discharge claim is also based on the wrongful arrest incident.  In particular, she alleges in her complaint that she left work soon after the incident and after her complaints about said incident.  Plaintiff also submits an

12

affidavit to that effect, when generously construed.  The court finds that complaining to your employer about a violation of one's right to be free from false arrest is a "public policy" sufficiently independent of the purpose of the federal employment laws to support a claim of wrongful discharge under the common law.  Accordingly, the court finds that plaintiff may pursue her claim against Pheasant Wood, appropriately narrowed to conform to the instant order.

## Conclusion

For the reasons stated herein, the court makes the following rulings:

1.  Defendant McCall's motion for summary judgment (document 50) is denied, except that plaintiff's battery claim (Count XI) is construed as a conspiracy to commit a battery.

2.  The motion for partial summary judgment of defendants Pheasant Wood and Sowerby Healthcare (document 55) on plaintiff's wrongful discharge claim is granted (as to Sowerby Healthcare) and is otherwise denied, except that the claim is modified to

comprise only economic damages and to exclude any reference to sexual harassment or gender discrimination.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 24, 1996

cc:   James J. Bianco, Jr., Esq.
      Roy A. Duddy, Esq.
      Carol L. Hess, Esq.
      John R. Falby, Jr., Esq.
      Brackett L. Scheffy, Esq.
      Robert T. Mittelholzer, Esq.
      Robert E. McDaniel, Esq.

14